Argued June 7, affirmed July 7, 1967

STATE OF OREGON, *Appellant, v.* EDWIN J. HAMRE, *Respondent.*

429 P. 2d 804

*A. R. McMullen,* District Attorney, Newport, argued the cause for appellant. With him on the briefs was R. P. Everhart, Deputy District Attorney, Newport.

*James H. Lewelling,* Newport, argued the cause and filed the brief for respondent.

Before PERRY, Chief Justice, and McALLISTER, O'CONNELL, GOODWIN and HOLMAN, Justices.

HOLMAN, J.

Defendant was convicted of the crime of threatening the commission of a felony in violation of ORS 161.330 which provides as follows:

> "Any person who threatens * * * by speech, writing, printing, drawing, or by any other method, the commission of a felony, shall be guilty of a crime * * *."

Defendant filed a motion for arrest of judgment upon the ground that the information on which he was tried did not state a crime. The motion was granted by the trial court and the state appealed. The charge made by the information was as follows:

> "That said Edwin J. Hamre * * * having showed to one Betty Lou Watkinson, a clip containing bullets for a firearm, and one Rickey Hamre

having been voluntarily committed to Fairview Home at Salem, Oregon, did * * * threaten the commission of a felony by then and there saying to the said Betty Lou Watkinson in substance: 'I suppose if I get the boy they will court-commit him. You won't come after him, it will be the sheriff and judge. I will get the sheriff first and he will be lying down and then I will get the judge and then myself' * * *."

The defendant contends that the above allegations do not constitute the statement of a threat as contemplated by the statute.

A threat is defined as any menace of such a nature and extent as to unsettle the mind of the person on whom it operates, and to take away from his acts that free, voluntary action which alone constitutes consent.[1] This definition by its terms requires that the statement must tend to incite mental apprehension and be coercive in nature.

At common law a threat was an indictable offense if it was in writing and made for the purpose of extorting money or property from another.[2] There is some contention that it was indictable if it was in writing and made for the purpose of coercing the actions of another, whether or not the extortion of money or property was involved.[3] Where a threat was not indictable at common law it was possible to bring the threatener before a magistrate for the purpose of re-

[1] U. S. v. French, 243 F 785 (1917); State v. Kramer, 31 Del (1 W. W. Harr.) 454, 115 A 8 (1921); Klingel's Pharmacy v. Sharp & Dohme, 104 Md 218, 64 A 1029, 7 LRA (NS) 976, 118 Am St Rep 399 (1906); State v. Brownlee, 84 Iowa 473, 51 NW 25 (1892); 28 Amer & Eng Enc Law 141 (2d ed 1904).

[2] 28 Amer & Eng Enc Law 141, supra.

[3] Intra L Rev N Y U 1958-1960, p 252.

quiring him to post bond not to breach the peace by committing the offense threatened.[4]

■■ The state contends that the mere speaking of the words is prohibited and, if the state is correct in this contention, it follows that the harm[5] against which the statute was intended to operate was the commission of the felony threatened, and that the legislature sought to suppress the harm by bringing about the arrest and incarceration of the person making the threat before he had an opportunity to carry it out. From this interpretation of the statute it would follow that the crime is committed whenever the defendant communicates to any other person a statement to the effect that he intends to commit a felony. The making of such a statement is so remote from the actual commission of the felony, that we cannot, in the absence of clear and compelling statutory language, presume that the legislature intended to punish a defendant for the mere utterance, when no immediate harm resulted from his conduct. The harm sought to be prevented by the statute under which defendant was charged must have been something more than a mere statement that a person is going to commit a felony. Otherwise the language "makes a statement" or similar words would have been used in place of the word "threatens."

ORS 161.330, under which defendant was charged, was enacted in 1913.[6] At the time of its enactment there was already in existence ORS 163.480 which makes certain threats of a coercive nature unlawful. It provides as follows:

"Any person who verbally or by written or printed communication, threatens any injury to the

---

[4] Amer & Eng Enc Law 141, supra.

[5] See generally, Eser, *The Principle of "Harm" in the Concept of Crime,* 4 Duquesne L Rev 345 (1966).

[6] Oregon Laws 1913, Ch 66.

person or property of another, or that of any person standing in the relation of parent or child, husband or wife, or sister or brother to the other person, or threatens to accuse another of any crime with intent thereby to extort any pecuniary advantage or property from him, or with intent to compel him to do any act against his will, shall be punished  *  *  *."

The statute under which defendant was charged would not appear to have been enacted to prevent coercion. If this had been the intention, all that would have been necessary was the addition of a new classification of prohibited acts to the then existing statute.

■ If the statute contemplates more than a simple statement of the intention to commit a felony and less than a threat coercive in nature, it must have been the intention to cover menacing statements which tend to cause the other element of a threat, i.e., the creation of mental apprehension. There would be a clear public policy in making unlawful statements of an intention to commit a felony which tend to inflict fear in another. First, members of the public have a right to go about their business without apprehension; second, apprehensive persons commonly take personal action against the source of their fear. This leads to controversy, violence and breaches of the peace.

■ An examination of the words which were spoken by defendant and the circumstances in which they were said as alleged in the information makes it clear that no threat sufficient to sustain a conviction was addressed to the sheriff and the judge. There is no allegation of any communication to the sheriff and the judge.[7] Therefore, there is no showing of a situation

---

[7] 28 Amer & Eng Enc Law 145, supra.

from which it could be found that they were caused any mental apprehension.

■■ The state contends that it was Betty Lou Watkinson who was the threatened person and that the statement tended to put her in fear by threatening injury to the sheriff and the judge. The person threatened may be other than the one to whom it is stated harm is intended. However, in the absence of the allegation of circumstances indicating a reason for special concern on the part of Betty Lou Watkinson in the welfare of the sheriff and the judge, we do not believe the statement in the information could constitute a threat to her. It is not the kind of statement, made to a citizen at large, which would excite fear. It could be argued that the proof might show that Betty Lou Watkinson bore a relation to the sheriff and the judge from which a jury could find that a person in her position would feel apprehension sufficient to "unsettle the mind." If so, facts should have been alleged sufficient to demonstrate the threatening nature of the statement as to her.[9] In order to prepare his defense, defendant was entitled to be informed by the indictment that she was the one he was accused of threatening, and of the circumstances by which the state claimed the statement was menacing to her.

■■ The defendant also contends that the statement alleged to have been made by him does not constitute a threat because it was not an unconditional statement that he would do harm to the sheriff and the judge, but rather was contingent upon other things occurring, i.e., that defendant would get the boy, the boy would be court-committed, and the sheriff and the judge would come after the boy. No satisfactorily rea-

---

[9] State v. Jamison, 99 Miss 248, 54 So 843 (1911).

soned authority[9] has been cited to us, nor have we found any, for the proposition that a statement of intention to commit harm to another cannot, in any instance, constitute a threat if the commission of the harm is dependent upon a further occurrence. A statement of an intention to inflict harm on another, where the harm is conditioned upon a further happening, would certainly tend to generate fear in direct proportion to the likelihood of the condition coming to pass. Therefore, the fact that the infliction of the harm is upon condition does not in all cases preclude a threat. However, it is reasonable to assume that if enough conditions of unlikely occurrence are prerequisite to the infliction of the harm, the result will be a statement that causes no apprehension and therefore is not threatening. It is our conclusion that so many conditions of highly problematical occurrence were made prerequisite to the infliction of the harm by the defendant, that the result was a statement that could not cause sufficient apprehension to justify it being considered a threat as contemplated by the statute.

The judgment of the trial court is affirmed.

---

[9] See Nat Terence v. the State, 137 Tex Cr R 322, 128 SW2d 1211, subsequently partially repudiated by Spencer v. State, 156 Tex Cr R 628, 245 SW2d 710 (1952), which is in turn criticized in 31 Tex L Rev 334 (1953).