**Gary POSTELL, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 5629.**

District of Columbia Court of Appeals.

Argued July 26, 1971.

Decided Oct. 26, 1971.

William J. Garber, Washington, D. C., for appellant.

Richard L. Cys, Asst. U. S. Atty., with whom Thomas A. Flannery, U. S. Atty., John A. Terry and Harry J. McCarthy, Asst. U. S. Attys., were on the brief, for appellee.

Before KELLY, NEBEKER and YEAGLEY, Associate Judges.

YEAGLEY, Associate Judge:

After a trial by jury, appellant was convicted of two counts of threats to do bodily harm in violation of D.C. Code 1967, § 22–507.[1] On this appeal two contentions are made.

First, it is urged that the trial court erred in failing to grant appellant's motion for acquittal at the close of all the evidence. Second, appellant argues that his motion for mistrial should have been granted when a Government witness, in the course of his testimony, referred to appellant as a "pimp". Finding no error, we affirm.

The Government presented evidence that on October 6, 1970, appellant, accompanied by two sturdy male companions, approached Officers Rand and Marshall in the third floor corridor of the Court of General Sessions outside the witness room and threatened them with bodily harm if they did not stop "locking up" his "girls". The officers were in the courthouse to testify in two prostitution cases, one of which involved a friend of the appellant, when the trio first approached them.

The officers testified in substance that appellant said to Officer Rand that if he saw him "locking up one of his girls one night" he would "blow [his] m.f. brains out." Both officers also testified that appellant said "he would put a contract out on [Officer Rand]" if he did not stop

1. "Whoever is convicted in the District of threats to do bodily harm shall be fined not more than $500 or imprisoned not more than six months, or both * * *."

bothering appellant's "girls". Following the disposition of the prostitution case, appellant again approached the officers and directing his comments toward Officer Marshall said, "the next time I see you locking up any of my girls, I am going to have to f * * * you up."

Appellant first claims that the words he is alleged to have spoken did not reveal a present intention to do harm, but were conditional and therefore did not constitute an offense under the statute. He further contends that "the distinguishing factor which transforms a conditional threat into an offense is the intention to do harm unless the condition is met immediately." We do not agree.

The crime of oral threats to do bodily harm was unknown to the common law and we know of no cases in this jurisdiction which have construed our statute or the meaning of the word "threats". Accordingly, we must first interpret D.C. Code 1967, § 22–507, in light of the facts in this case and the applicable principles of law as we understand them.

In State v. Hamre, 247 Or. 359, 362, 429 P.2d 804, 806 (1967), the court defined a threat as:

> * * * any menace of such a nature and extent as to unsettle the mind of the person on whom it operates, and to take away from his acts that free, voluntary action which alone constitutes consent. [Footnote omitted.]

In State v. Lizotte, 256 A.2d 439, 440 (Me.Sup.Jud.Ct.1969), the court, quoting with approval from State v. Cashman, 217 A.2d 28, 29 (Me.Sup.Jud.Ct.1966), noted:

> * * * that the word "threat" connotes "menace," that "the circumstances under which the threat is uttered and the relations between the parties may be taken into consideration" and that "[t]he threat must also be such as would ordinarily create alarm."

The facts of the instant case would seem to come within those two definitions.

Appellant contends, however, that these threats being conditional are not within the purview of the statute. That argument, admittedly, could be well taken under different facts where by virtue of the nature of the condition the threat becomes so remote as not to connote a menace or to create alarm. We think that contention is inapposite here. It would seem that a "threat" that is not conditional would be an assault. It is necessary only that the threats impart the expectation of bodily harm, thereby inducing fear and apprehension in the person threatened. State v. Schultheis, 113 N.J.Super. 11, 272 A.2d 544, 547 (1971). A statement of an intention to inflict harm on another, conditioned upon a future happening would tend to generate fear in direct proportion to the likelihood of the condition coming to pass. Of course a threat on a condition that the victim believes will never occur cannot be actionable. However, the mere fact that the infliction of the harm is upon condition does not by any means preclude it from being a threat within the meaning of the Code. The fact that the threats made were conditioned upon the officers locking up appellant's "girls" again does not make them any less real. The threats were of such a nature as to indicate they were intended to be activated when the condition occurred. *See* State v. Schultheis, *supra,* 272 A.2d at 547; State v. Hamre, *supra,* 429 P.2d at 808. A threat that is to be activated if the intended victim carries out some act that is his legal or moral duty to perform is very real indeed and certainly cannot be deemed to be remote.

It matters not whether or to what degree the threat engenders fear or intimidation in the intended victim or whether the appellant had or had not the intention to carry out the threat later. State v. Lizotte, *supra,* 256 A.2d at 442. The gist of the crime is that the words used are of such a nature as to convey a menace or fear of bodily harm to the ordinary hearer. State v. Schultheis, *supra,* 272 A.2d at 548.

In the case at bar, although couched in the language of the street, the jury could find that the phrasing employed by appellant was designed to induce fear and apprehension in the ordinary hearer. We do not ask whether appellant succeeded in frightening these police officers, but whether under the circumstances the language used by appellant when heard by the ordinary person would be understood as being spoken not in jest, but as carrying the serious promise of bodily harm or death. We are satisfied that the evidence meets these requirements.

In ruling on a motion for acquittal the trial court need only consider "whether there is sufficient evidence to allow the jury to find guilt beyond a reasonable doubt * * *." Crawford v. United States, 126 U.S.App.D.C. 156, 158, 375 F.2d 332, 334 (1967). We believe the evidence here easily meets that test.

Neither can we agree with appellant's second claim of error, that the trial court committed reversible error when it refused to grant appellant's motion for a mistrial. Appellant contends it was prejudicial error for Officer Rand to refer to appellant as "a pimp" in response to the following line of questioning regarding appellant's relationship to the girls in the prostitution case, in which he and Officer Marshall had testified.

> Q. And do you know what Mr. Postell's relationship with these persons were [sic]?
>
> A. Yes.
>
> Q. What?
>
> A. A pimp.

Defense immediately moved for a mistrial.

■ At the ensuing bench conference the trial judge said:

> "Mr. Ringell, you heard the question. I am going to deny the mistrial. I will instruct the jury to disregard it. However, I will not grant the mistrial be-

cause I think you tried to sandbag it. I think you heard the question, and what the answer was going to be was obvious, and you waited on the question and answer before you said anything. I will instruct the jury at this time to disregard it, but I will not direct a mistrial."

It seems to us that in a situation such as this, defense counsel has an obligation to prevent the question from being answered when the obvious answer that is to come may be deemed by him sufficiently prejudicial to warrant a mistrial. This is particularly so where the content of the previous question made clear what was to follow thereby offering ample opportunity for a timely objection.

■ This is not to say, however, that the answer was prejudicial in the context of this case. The descriptive words used by the appellant in his threats to the officers made patently clear to the jury what his relationship was to the girls. We fail to see how a witness' characterization of that relationship, albeit in one word, which is not in conflict with appellant's own description, could have been prejudicial.

Accordingly, the judgment is

Affirmed.