Jermaine L. **GRIFFIN**, Appellant,

v.

**UNITED STATES**, Appellee.

No. 99–CF–1484.

District of Columbia Court of Appeals.

Argued Oct. 5, 2004.

Decided Nov. 18, 2004.

Winsome G. Gayle, Public Defender Service, with whom James Klein, Sandra K. Levick and Tracey D. Weaver, Public Defender Service, were on the brief, for appellant.

Gary K. Milligan, Assistant United States Attorney, with whom Roscoe C. Howard, Jr., United States Attorney at the time the brief was filed, and John R. Fisher and Barbara J. Vallière, Assistant United States Attorneys, were on the brief, for appellee.

Before FARRELL and REID, Associate Judges, and STEADMAN, Senior Judge.*

_____

* Judge Steadman was an Associate Judge, Re- tired at the time of argument. His status

REID, Associate Judge:

Appellant Jermaine L. Griffin was convicted on charges of obstruction of justice, in violation of D.C.Code § 22–722(a)(2) (1996),[1] and threatening to injure a person, in violation of D.C.Code § 22–2307 (1996).[2] He challenges the sufficiency of the evidence with respect to both of these charges. We conclude that on this record the evidence presented at trial was insufficient beyond a reasonable doubt to convict Mr. Griffin of the obstruction of justice charge, and thus, reverse his conviction as to that offense. Because we determine that the evidence was sufficient beyond a reasonable doubt to convict him of threatening to injure a person, however, we affirm that conviction.

## FACTUAL SUMMARY

The government charged Mr. Griffin with the armed murder of a young man named Vandros Kibler who apparently had stolen appellant's bicycle. The evidence of this crime was primarily the testimony of Erica Haynes, who had seen Mr. Kibler take the bike, later told Mr. Griffin of the theft and was subsequently told by appellant that he had killed Mr. Kibler in retaliation ("I had to do what I had to do."). A jury (after an initial mistrial) eventually acquitted Mr. Griffin of the murder and related weapons charges. The government, however, also charged Mr. Griffin with threats and obstruction of justice based on statements he had made to Monique Haynes, Erica's sister, while under arrest for the charged murder. The evidence relevant to those charges, on which

the jury convicted Mr. Griffin, is as follows.

Government witness Monique Haynes testified that in January 1998, while she was waiting to visit her cousin and ex-boyfriend at the District of Columbia jail, she saw Mr. Griffin. He motioned to her to come over to the glass separating visitors from the inmates. Ms. Haynes complied, and picked up the telephone to communicate with him. "He told [her] . . . to tell Erica [Monique's sister] to come down to his court date which was the next day after that and tell his lawyer everything that [she] told the police." He also stated: "If [she does not] come something bad was going to happen to her." Ms. Haynes did not remember exactly what Mr. Griffin said except to "tell Erica to tell his lawyer everything that she told the police." She did not remember "what that bad thing was." However, "it was something life-threatening[,] something bad." When asked "what was Jermaine's tone of voice[,]" Ms. Haynes replied: "He was just speaking regular." Later, Ms. Haynes relayed the message to her sister. Monique stated that Erica Haynes "said she was going" to the court, and she looked "scared" after receiving the message from Mr. Griffin. The prosecutor asked Monique Haynes whether she testified at the grand jury that "something bad was going to happen to [Erica's] life." She answered, "Yes." On cross-examination, Monique Haynes replied, "No" to defense counsel's question: "He [Jermaine Griffin] didn't ask you to tell Erica to lie, did he?"

Erica Haynes[3] also testified as a government witness. When she saw Mr. Grif-

---

changed to Senior Judge on October 18, 2004.

1. Recodified at D.C.Code § 22–722 (2001).

2. Recodified at D.C.Code § 22–1810 (2001). Mr. Griffin was sentenced to four to twelve

years in prison on the obstruction charge and a concurrent sentence of three to nine years in prison on the threats offense.

3. Erica Haynes' first name also appears in the record as "Erika."

fin one evening, she borrowed his bike and one dollar to go to the store to get something to eat. Before she went into the store, she advised a man who had a reputation for stealing bikes not to take the bicycle. As she left the store, she saw the same man riding up the street on the bike. Her efforts to stop him failed. She again encountered Mr. Griffin while walking home and told him that his bike had been taken. Mr. Griffin said he could get his bike back. Later, while standing in front of her home, she saw Mr. Griffin speaking with the man who took his bicycle. After she had entered her home, she heard gunshots. When she went outside to see what had happened, she learned that the man who had taken the bicycle had been shot. The next day when she saw Mr. Griffin, he told her that the man who had stolen his bike was dead. He also allegedly said: "I killed him but don't tell [any]body." On cross-examination, Erica Haynes said when she asked Mr. Griffin who shot the man who took his bicycle, he responded "jokingly" and she did not take him "seriously."

The prosecutor asked Erica Haynes about the time her sister went to the D.C. jail. Erica Haynes confirmed that on the same day her sister Monique went to the jail, she reported that she had seen Mr. Griffin, and "that [Mr. Griffin] wanted [Erica] to be [at the court on the day of his preliminary hearing] so that [she] can talk to his lawyers or whoever about the situation." In response to the prosecutor's question as to what Mr. Griffin said would happen if she did not appear, Erica responded: "I don't remember word-for-word but she said that it was life-threatening."

On cross-examination Erica Haynes acknowledged that when the police first interviewed her in December 1997, she stated that she did not hear gunshots on the night Mr. Griffin's bicycle was stolen. The police accused her of lying and said she had "to be concerned about her baby" if she did not "cooperate with them." She then agreed that she had heard gunshots. Erica Haynes also admitted that she had advised her sister that she "thought some Spanish people had done the shooting." On redirect examination Erica Haynes asserted that she had dissembled about the gunshots because she did not "want to talk to the police at all" and did not "want to be snitching."

## ANALYSIS

Mr. Griffin contends that as a matter of law, the evidence was insufficient to convict him beyond a reasonable doubt of obstruction of evidence "because the third element—that defendant made a threat with the specific intent to influence, delay, or prevent Erika Haynes' truthful testimony—was not met in this case." Hence, the trial court should have granted his motion for judgment of acquittal. The government argues that based upon reasonable inferences, it satisfied its burden beyond a reasonable doubt to prove obstruction of justice.

■ "In reviewing a claim of evidentiary insufficiency, we view the evidence in the light most favorable to the government, recognizing the province of the fact finder to weigh the evidence, resolve issues of credibility and to draw reasonable inferences from the evidence presented." *Smith v. United States*, 837 A.2d 87, 91–92 (D.C.2003) (citing *Mitchell v. United States*, 683 A.2d 111, 114 (D.C.1996)) (other citations omitted). "This court will reverse only where the government has failed to present evidence from which a reasonable mind might fairly infer guilt beyond a reasonable doubt." *Smith*, 837 A.2d at 92 (citing *In re M.I.W.*, 667 A.2d 573, 575 (D.C.1995)) (other citations omit-

ted). The standard for reviewing the denial of a motion for judgment of acquittal is similar: "[W]e, like the trial court, determine whether the evidence, viewed in the light most favorable to the government, was such that a reasonable juror could find guilt beyond a reasonable doubt." *Guzman v. United States*, 821 A.2d 895, 897 (D.C.2003) (citing *Johnson v. United States*, 756 A.2d 458, 461 (D.C.2000)). "[A] motion for judgment of acquittal should not be granted where the evidence is such that a reasonable mind might or might not have a reasonable doubt as to the guilt of the accused." *Guzman*, at 897–98 (citation and internal quotation marks omitted).

D.C.Code § 22–722(a) (2001) provides in pertinent part:

(a) A person commits the offense of obstruction of justice if that person: ....

(2) Knowingly ... threatens or corruptly persuades another person, or ... endeavors to influence, intimidate or impede a witness ... in any official proceeding, with intent to:

(A) Influence, delay, or prevent the truthful testimony of the person in an official proceeding;

....

To establish that Mr. Griffin committed the offense of obstruction of justice, the government was required to prove beyond a reasonable doubt that:

1. That [he] endeavored to influence, intimidate or impede Erica Haynes;

2. That [he] did so by threatening Erica Haynes, or sending a threatening communication to her;

3. That [he] did so with the specific intent to:

Influence, delay or prevent Erica Haynes' truthful testimony in a preliminary hearing in a court of the District of Columbia; and

4. That [he] knew or believed that Erica Haynes was a witness.

*See* CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA, No. 4.81 (4th ed. 2002).

■ On this record we are unable to conclude that the evidence presented at trial was sufficient beyond a reasonable doubt to establish Mr. Griffin's specific intent to influence or prevent Erica Haynes' truthful testimony in a preliminary hearing. *See Brown v. United States*, 766 A.2d 530, 541 (D.C.2001). Unlike other cases in which we have affirmed obstruction of justice convictions, *see, for example, McCullough v. United States*, 827 A.2d 48 (D.C.2003); *Crutchfield v. United States*, 779 A.2d 307 (D.C.2001), where there was credible evidence implicating the appellant in both cases in the murder of a witness to preclude the witness' testimony against them, the record here is limited and attenuated as to facts from which we can reasonably glean, within the context of the reasonable doubt standard, Mr. Griffin's intent regarding the message he communicated to Erica Haynes through her sister Monique Haynes. In the government's view the evidence permitted jurors to draw a reasonable inference that Mr. Griffin intended to prevent Erica Haynes from giving truthful testimony in his case, based on (a) his statement that Erica Haynes should "come down to his court date [for a preliminary hearing] ... and tell his lawyer everything [she] told the police"; (b) his comment that something "bad" or "life-threatening" would happen to Erica Haynes if she did not comply with his instruction; and (c) the fact that Erica Haynes made prior false statements to the police and hence would lie in his behalf at his preliminary hearing. On this record, however, we cannot discern the requisite intent that would support beyond a reason-

able doubt Mr. Griffin's conviction for obstruction of justice. Indeed, the record is not extensive enough for us to fathom what Mr. Griffin knew, if anything, concerning what Erica Haynes had told the police.

Drawing the inferences the government advocates would take us into the realm of speculation. The record shows that Mr. Griffin did not ask Erica Haynes to come down and testify or lie in his behalf at his preliminary hearing. Rather, in a regular voice, he asked that she speak with his lawyer to tell him what she had said to the police. It is simply too much of a stretch to conclude that Mr. Griffin's message instructed Erica Haynes to lie at his preliminary hearing, or that by importuning her to tell his lawyer what she had told the police (a statement that in fact inculpated him) he somehow intended false testimony to be put before the tribunal. In short, on this limited and attenuated record, to convict Mr. Griffin of obstructing justice, jurors would have to engage in speculation and the drawing of several inferences which would not comport with the reasonable doubt standard required for a criminal conviction. As we said in *Curry v. United States,* 520 A.2d 255 (D.C.1987), "the evidence is insufficient if, in order to convict, the jury is required to cross the bounds of permissible inference and enter the forbidden territory of conjecture and speculation." *Id.* at 263 (quoting *Shelton v. United States,* 505 A.2d 767, 770–71 (D.C.1986)). In the absence of "evidence from which a reasonable mind might fairly infer guilt beyond a reasonable doubt,"

*Smith,* 837 A.2d at 92, we are constrained to reverse Mr. Griffin's judgment of conviction on the charge of obstructing justice.

We reach a different conclusion, however, concerning Mr. Griffin's conviction of threatening to injure a person. To satisfy its burden, the government must present credible evidence:

1. That the defendant uttered words to another; [4]

2. That these words were of such a nature as to convey fear of serious bodily harm or injury to the ordinary hearer; and

3. That the defendant intended to utter these words as a threat.[5]

*Baish, supra* note 4, at 42 (citing CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA, No. 4.17 (3d ed. 1978)). *See also* D.C.Code § 22–1810 (2001) ("Whoever threatens within the District of Columbia ... to injure the person of another ... shall be fined not more than $5,000 or imprisoned not more than 20 years, or both.").

Mr. Griffin contends that the government failed to prove the second element of this offense. He argues that "[b]ecause the jurors were not presented with the words allegedly used by [him], they were unable to evaluate whether the words spoken would have been considered threatening by the 'ordinary listener.'" The government responds that "based on the context in which [Mr. Griffin] communicated his message to Erica [Haynes], the jury could infer that [his] words were a threat."

---

4. "[T]he government need not prove that the threatening words were conveyed directly to the potential victim; proof that the words were communicated to a third party suffice[s]." *United States v. Baish,* 460 A.2d 38, 42 (D.C.1983) (citing *Gurley v. United States,* 308 A.2d 785, 787 (D.C.1973)).

5. The government challenges the correctness of this third element of the offense, citing the less demanding language of *Campbell v. United States,* 450 A.2d 428, 430 n. 5 (D.C.1982). We need not decide this issue since the evidence is sufficient on this element under either formulation.

 Here, according to testimony from Monique Haynes, Mr. Griffin's message to Erica Haynes was "tell Erica to come down to his court date ... and tell his lawyer everything that [she] told the police." The penalty for not complying with his wishes was, "something bad was going to happen to her," "something life-threatening." "No precise words are necessary to convey a threat. It may be bluntly spoken, or done by innuendo or suggestion." *Clark v. United States,* 755 A.2d 1026, 1030 (D.C.2000), quoting *State v. Howe,* 247 N.W.2d 647, 654 (N.D.1976). Although Monique Haynes could not recall Mr. Griffin's exact words, she did remember the substance, that it was "something life-threatening[,] something bad." And, that was sufficient to satisfy the second element of the statute. *Heilman v. District of Columbia,* 172 A.2d 141 (D.C.1961), on which Mr. Griffin relies, is not controlling. There, the appellant was convicted of using profane, indecent or obscene language. On appeal, the conviction was overturned because "the court could not properly find that language was profane and indecent without first knowing what language was used," *id.* at 142, because the prohibited conduct was the actual use of profane or indecent language, not the effect of words on an "ordinary listener." *Id.* That is not the case here, and the words "something life-threatening," "something bad," obviously could be found by the jury to be "of such a nature as to convey fear of serious bodily harm or injury to the ordinary hearer." *Clark, supra.* Consequently, Mr. Griffin cannot prevail in his argument that the government failed to prove the second element of the threatening to injure a person offense, and we conclude that beyond a reasonable doubt the evidence was sufficient to convict him of threatening to injure Erica Haynes.

Accordingly, for the foregoing reasons, we reverse Mr. Griffin's conviction on the charge of obstruction of justice, but affirm his conviction for threatening to injure a person; and we remand this case to the trial court for resentencing.

*So ordered.*