# District of Columbia
# Court of Appeals

**No. 14-CM-1011**

MARK E. LEWIS,



F I L E D

MAY **12** 2016

DISTRICT OF COLUMBIA
COURT OF APPEALS

Appellant,

v.

**DVM-1153-14**

UNITED STATES,

Appellee.


On Appeal from the Superior Court of the District of Columbia
Criminal Division

BEFORE: BLACKBURNE-RIGSBY and THOMPSON, *Associate Judges*; and REID, *Senior Judge*.


## J U D G M E N T

This case was submitted to the court on the transcript of record and the briefs filed, and without presentation of oral argument. On consideration whereof, and for the reasons set forth in the opinion filed this date, it is now hereby

ORDERED and ADJUDGED that the appellant's convictions of second-degree theft and attempted threats are affirmed.

For the Court:

*Julio A. Castillo*

JULIO A. CASTILLO
Clerk of the Court


Dated: May 12, 2016.

Opinion by Associate Judge Anna Blackburne-Rigsby.

*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 14-CM-1011

MARK E. LEWIS, APPELLANT,

v.

UNITED STATES, APPELLEE.

FILED 5/12/16
District of Columbia
Court of Appeals

Julio Castillo
Clerk of Court

Appeal from the Superior Court of the
District of Columbia
(DVM-1153-14)

(Hon. Jennifer M. Anderson, Trial Judge)

(Submitted November 10, 2015                    Decided May 12, 2016)

*Charles Burnham* was on the brief for appellant.

*Vincent H. Cohen, Jr.*, Acting United States Attorney at the time the brief was filed, and *Elizabeth Trosman*, *Suzanne Grealy Curt*, *John B. Timmer*, and *Ann K. H. Simon*, Assistant United States Attorneys, were on the brief for appellee.

Before BLACKBURNE-RIGSBY and THOMPSON, *Associate Judges*, and REID, *Senior Judge*.

BLACKBURNE-RIGSBY, *Associate Judge*:  Following a bench trial, appellant

Mark Lewis was convicted of second-degree theft and attempted threats.[1]  The trial

---

[1] *See* D.C. Code §§ 22-3211, 3212 (b) (2012 Repl.) and D.C. Code §§ 22-407, -1803 (2012 Repl.), respectively.

court found him guilty of stealing money from and later threatening a romantic acquaintance, Lavonda Brown. On appeal, appellant argues that there was insufficient evidence to sustain either of his convictions. Principally, he argues that his uttered words would not have reasonably caused Ms. Brown to fear "*serious* bodily harm," which appellant claims is a required element of our misdemeanor threats offense, as opposed to just "bodily harm." He also argues that his theft conviction should be reversed because no one actually saw him take Ms. Brown's money. We affirm appellant's convictions and clarify that the crime of misdemeanor "threats to do bodily harm" under D.C. Code § 22-407 does not require proof that a defendant threatened "*serious* bodily harm." Rather, all that is required is that the uttered "words were of such a nature as to convey fear of bodily harm or injury . . . ." *Joiner-Die v. United States*, 899 A.2d 762, 764 (D.C. 2006).[2]

---

[2] In full, *Joiner-Die* and some of our other cases state that the crime of threats requires the government to prove "(1) [that] the defendant uttered words to another person; (2) that the words were of such a nature as to convey fear of bodily harm or injury to the ordinary hearer; and (3) that the defendant intended to utter the words which constituted the threat." 899 A.2d at 764 (citing *Evans v. United States*, 779 A.2d 891, 894 (D.C. 2001)). On January 26, 2015, the en banc court heard arguments on whether the Supreme Court's recent decision in *Elonis v. United States*, 135 S. Ct. 2001 (2015), which clarified the *mens rea* element of the federal threats statute, impacts the interpretation of the intent element of the District of Columbia's threats statute, D.C. Code § 22-407, which admittedly has been the subject of ambiguity for some years. *See Carrell v. United States*, 80 A.3d 163 (D.C. 2013) *vacated and en banc rehearing granted by* No. 12-CM-523, 2015 WL 5725539, at *1 (June 15, 2015). While the pending en banc opinion will impact the *mens rea* of D.C. Code § 22-407, it will not impact our analysis of

(continued…)

## I.     Factual Background

On the night of March 13, 2014, appellant slept at Ms. Brown's apartment, located at 2900 14th Street, Northwest, Washington, D.C.  Before going to sleep, Ms. Brown placed her wallet containing $736 underneath her pillow.  The next morning, appellant woke up Ms. Brown because her friend, Conovia Eddie, was at the door.  Ms. Brown greeted Ms. Eddie, and the two sat down on the couch in the living room to chat while appellant went back by himself into the bedroom, supposedly to watch a movie.  A little later, appellant walked out of the bedroom and took out the trash and never came back.  Approximately thirty to forty-five minutes later, Ms. Brown walked into her bedroom, observed her pillows in a state of disarray, and found her wallet underneath the bed with the money missing.  Panicked, Ms. Brown ran out of the apartment, saw a police officer, and reported that appellant had stolen her money.  At trial, Ms. Brown explained that appellant knew that she had "hundreds" in her wallet after he saw her pay for carryout the night before the theft.

---

(…continued)
whether the crime of threats requires "serious bodily harm" or just "bodily harm," which is a distinct element of the offense of threats not at issue in *Carrell*.

Later, on March 20, 2014, Ms. Brown spoke with appellant on the phone about the missing money. During the call, Ms. Brown asked for her money back, and appellant in response denied taking it and threatened to hurt her, stating: "I didn't take your money. Stop playing with me, b****. I'll smack the s*** out of you" and "[g]et you f***ed up." The trial court credited Ms. Brown's testimony as to both the theft and the threats, and found appellant guilty as charged. This appeal followed.

## II.  Discussion

### A. Attempted Threats

Appellant's primary argument is that the evidence was insufficient to convict him of attempted threats because the charge requires proof that he threatened "*serious* bodily harm" and "not just any kind of harm." In making this argument, appellant urges that this court define "serious bodily harm," a phrase which has appeared in some of our previous cases in the threats context,[3] by

---

[3] *See Gray v. United States*, 100 A.3d 129, 133 (D.C. 2014) (explaining that the offense of threats requires the words uttered "to convey fear of serious bodily harm or injury . . ."); *Lewis v. United States*, 95 A.3d 1289, 1291 (D.C. 2014) (same); *Evans*, *supra* note 2, 779 A.2d at 894 (same).

looking to the definition of "serious bodily injury" that applies in the context of aggravated assault.[4] He claims that his statements did not meet this definition of "serious bodily harm" when he threatened to "smack the s*** out" of Ms. Brown and "get [her] f***ed up." We review this question de novo. *Sutton v. United States*, 988 A.2d 478, 482 (D.C. 2010).

Under D.C. Code § 22-407, it is a crime to utter or convey "threats to do bodily harm." We have defined threats as requiring the following: "(1) that the defendant uttered words to another person; (2) that the words were of such a nature to cause the ordinary hearer reasonably to believe that the *threatened harm would take place*; and (3) that the defendant intended to utter the words as a threat." *In re S.W.*, 45 A.3d 151, 155 (D.C. 2012) (emphasis added) (citations, internal quotation marks, and brackets omitted); *see also Joiner-Die*, *supra*, 899 A.2d at 764 (same except for the third element, which the court described as "the defendant intended to utter the words which constituted the threat").

---

[4] In the aggravated assault context, serious bodily injury is defined as a "bodily injury that involves a substantial risk of death, unconsciousness, extreme physical pain, protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ or mental faculty." *Nixon v. United States*, 730 A.2d 145, 149 (D.C. 1999) (quoting D.C. Code § 22-4101 (7), republished as D.C. Code § 22-3001 (7) (2012 Repl.)).

In contrast, appellant relies on language found in *Griffin v. United States*, 861 A.2d 610, 615 (D.C. 2004), and some of our other cases, *see supra* note 3, where we have characterized the crime of misdemeanor threats as requiring that the uttered words (or conduct) convey fear of "*serious* bodily harm." For example,

> To satisfy its burden [of proving threats], the government must present credible evidence:
>
> 1. That the defendant uttered words to another;
>
> 2. That these words were of such a nature as to convey fear of *serious bodily harm* of injury to the ordinary hearer; and
>
> 3. That the defendant intended to utter these words as a threat.

*Griffin*, *supra*, 861 A.2d at 615 (emphasis added) (citations and footnotes omitted). Additionally, the current Criminal Jury Instructions define threats as causing a person to reasonably believe that he or she would be "seriously harmed." Criminal Jury Instructions for the District of Columbia, No. 4.130 (5th ed. rev. 2013). We are confident that usage of the phrase "serious bodily harm," as opposed to just "bodily harm," in some of our cases does not indicate a requirement of proof that a defendant threatened a particular degree or severity of injury.

As far as we can tell, no case from this court has ever squarely considered whether the crime of threats requires proof of a threat to do bodily harm (of any type) or a threat to do *serious* bodily harm. It is well-established that "[t]he rule of stare decisis is never properly invoked unless in the decision put forward as precedent the judicial mind has been applied to and passed upon the *precise* question." *District of Columbia v. Sierra Club*, 670 A.2d 354, 360 (D.C. 1996) (quoting *Murphy v. McCloud*, 650 A.2d 202, 205 (D.C. 1994)) (emphasis added). Consequently, because there is no case law deciding the issue raised by appellant and "[a] point of law merely assumed in an opinion, not discussed, is not authoritative," this division has the authority to decide the question now without running afoul of *M.A.P. v. Ryan*, 285 A.2d 310, 312 (D.C. 1971) ("[N]o division of this court will overrule a prior decision of this court . . . .").[5]

Our threats statute does not mention the word "serious." Because it is a well-established principle that the "definition of the elements of a criminal offense is entrusted to the legislature," the absence of the word "serious" from our threats statute (since at least the 1967 codification, *see Gurley v. United States*, 308 A.2d

---

[5] For example, in *Jones v. United States*, 124 A.3d 127, 131 (D.C. 2015), this court did not consider whether appellant's similar threat to "smack the s[***] out of [the complainant]" constituted a threat to do "*serious*" bodily harm, as opposed to just bodily harm, even though it used the "serious bodily harm" formulation of the crime.

785, 787 (D.C. 1973)) is a strong indicator that the legislature never intended to distinguish between threats to do "serious bodily harm" and threats to do "bodily harm." *See Hood v. United States*, 28 A.3d 553, 559 (D.C. 2011) ("Generally speaking, if the plain meaning of statutory language is clear and unambiguous and will not produce an absurd result, we will look no further." (footnote and internal quotation marks omitted)).

A further review of the case law supports this view. The government observes, and appellant does not dispute, that the "serious bodily harm" language seems to have first appeared in a footnote in a 1982 case, *Campbell v. United States*, 450 A.2d 428, 431 n.5 (D.C. 1982). In characterizing the crime of threats as requiring that the "words were of such a nature as to convey fear of serious bodily harm or injury to the ordinary hearer," *Campbell* cites two sources: an earlier case, *Gurley*, and an earlier version of the Criminal Jury Instructions for the crime of "threats to do bodily harm," *see* Criminal Jury Instructions for the District of Columbia, No. 4.17 (3d ed. 1978). The court in *Gurley*, however, did not include any mention of "serious bodily harm" when defining the crime. *See Gurley*, *supra*, 308 A.2d at 787 ("All that the statute proscribes is a threat to do bodily harm."). While the earlier version of the Criminal Jury Instructions admittedly did include the "serious bodily harm" language, the instructions include

comments that make clear that the language was adapted from *Postell v. United States*, 282 A.2d 551 (D.C. 1971), the first case interpreting our threats statute, which, like *Gurley*, did not mention "serious bodily harm" when defining the crime. *Id.* at 553 ("The gist of the crime is that the words used are of such a nature as to convey a menace or fear of bodily harm to the ordinary hearer."). The "serious bodily harm" language appears to have been inadvertently added into some of our cases based on the following passage found in *Postell*: "[W]hether under the circumstances the language used by appellant when heard by the ordinary person would be understood as being spoken not in jest, but as carrying the *serious promise of bodily harm or death*." *Id.* at 554 (emphasis added). However, what the court in *Postell* was speaking to when referencing the word "serious" was that the threat had to be seriously made (as opposed to a joke), not that the defendant needed to threaten serious bodily harm.

Finally, while appellant claims that we should adopt the definition of "serious bodily injury," an element of our aggravated assault crime, *see supra* note 4, for "serious bodily harm" in the threats context, there is a compelling difference between an assault and a threat that counsels against reading "serious bodily harm" into our threats statute by incorporating the "serious bodily injury" definition. Our assault statute criminalizes violent physical behavior against another. *See Mungo*

*v. United States*, 772 A.2d 240, 245 (D.C. 2001). Ordinarily, it is relatively straightforward to prove the degree or amount of violence that a defendant has inflicted onto another and punish him or her accordingly.[6] For example, to prove aggravated assault, the evidence must show that the victim suffered a "serious bodily injury," defined as a "bodily injury that involves a substantial risk of death, unconsciousness, extreme physical pain, protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ or mental faculty." *Nixon*, *supra* note 4, 730 A.2d at 149 (quoting D.C. Code § 22-4101 (7), republished as D.C. Code § 22-3001 (7)).

Our threats statute, on the other hand, criminalizes speech that communicates to a listener "a serious expression of an intent to commit an act of unlawful violence[.]" *Virginia v. Black*, 538 U.S. 343, 359 (2003). Applying the definition of "serious bodily injury" from the aggravated assault context in the

---

[6] Simple assault is a misdemeanor and ordinarily requires proof that the defendant used unlawful force to cause "injury to another" or "attempt[ed] to cause injury with the present ability to do so." *Mungo*, *supra*, 772 A.2d at 245. Felony assault, the intermediate level, allows for up to three years in prison and requires proof that the assault caused "significant (but not grave) bodily injury." *Quintanilla v. United States*, 62 A.3d 1261, 1263-64 (D.C. 2013) (citation, footnote, and internal quotation marks omitted). Lastly, aggravated assault allows for up to ten years in prison and requires proof that the assault caused "serious bodily injury." *Id.* at 1263 (citation, footnote, and internal quotation marks omitted).

threats context is unworkable, because there would in many instances be no way to determine whether a threat conveyed "serious bodily harm" or just "bodily harm," unlike the circumstances we confront in the more objective assault context.[7]

Even in the case at hand, it is unclear and possibly unknowable whether appellant's statements to Ms. Brown that he was going to smack the "s***" out of her and get her "f***ed up" threatened "serious bodily harm," under the definition appellant advocates ("[A] substantial risk of death, unconsciousness, extreme physical pain, protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ or mental faculty." *Nixon*, *supra* note 4, 730 A.2d at 149 (citations omitted)).[8]

---

[7] For example, the defendant in *Clark v. United States*, 755 A.2d 1026, 1028 (D.C. 2000), threatened a police officer by saying, "You won't work anywhere after I tell the boys," which the officer took to mean that the defendant would arrange for his "boys" "to do something to her so that she would be physically incapacitated from working." In this context, there is no way of knowing whether this threat by the defendant threatened "serious bodily harm." Similarly, the same issue arises in the context of hand gestures conveyed to another in a threatening fashion. *Cf. Ebron v. United States*, 838 A.2d 1140, 1151-52 (D.C. 2003) (appellant's hand movement from his "chin to his throat" was a threat towards a witness that was admissible to show consciousness of guilt).

[8] In fact, we have avoided similar arguments previously made that "serious bodily harm" should track the definition of "serious bodily injury" found in our aggravated assault cases. *See, e.g.*, *Jenkins v. United States*, 902 A.2d 79, 86-87 n.10 (D.C. 2006) ("In using the phrase 'serious bodily harm' . . . we did not

(continued…)

For these reasons, we hold that the crime of misdemeanor threats does not require proof that a defendant threatened "*serious* bodily harm," as opposed to "bodily harm." Usage of the phrase "serious bodily harm" found in some of our case law and in the Criminal Jury Instructions does not impose a different burden of proof. Rather, "our statements appear to be no more than particularly well-entrenched dicta, and we are not bound by them." *Buchanan v. United States*, 32 A.3d 990, 1001-02 (D.C. 2011) (citations, footnote, and internal quotation marks omitted). Appellant's attempted threats conviction is thus affirmed.

### B. Second-Degree Theft

Appellant next argues that his theft conviction should be reversed because no one actually saw him take the money. In reviewing appellant's sufficiency claim, we "view the evidence in the light most favorable to the government . . . ." *Cannon v. United States*, 838 A.2d 293, 296 (D.C. 2004). In so doing, "we do not draw any distinction between direct and circumstantial evidence." *Id.* at 297. To prove second-degree theft, the government must present evidence "(1) [that the defendant] wrongfully obtained the property [of another], (2) that at the time he

---

(…continued)
necessarily mean that the threatened bodily harm had to be as serious as we have subsequently required it to be in aggravated assault cases.").

obtained it, he specifically intended either to deprive [the owner] of a right to the property or a benefit of the property or to take or make use of the property for himself . . . without authority or right, and (3) that the property had some value." *Nowlin v. United States*, 782 A.2d 288, 291 (D.C. 2001) (citations, internal quotation marks, and original brackets omitted).

Here, the trial court credited Ms. Brown's account of the incident. Thus, even though no one directly observed appellant take the money, the strong circumstantial evidence provided by Ms. Brown is sufficient to prove appellant's guilt beyond a reasonable doubt. *See Graham v. United States*, 12 A.3d 1159, 1163 (D.C. 2011) ("We have repeatedly held that the testimony of one witness is sufficient to sustain a conviction."). Specifically, Ms. Brown testified that she had $736 in her wallet before she went to bed, and that she placed her wallet underneath her pillow for safekeeping. Appellant knew Ms. Brown had "hundreds" in her wallet after seeing her pay for carryout the night before. In the morning, Ms. Brown chatted with Ms. Eddie in the living room, while appellant retreated to the bedroom by himself for a significant period of time. After appellant left the apartment and never came back, Ms. Brown walked into her bedroom and noticed that her wallet was out of place, and that the money was missing. Taken together, the evidence established that appellant was the only

person who had the opportunity and means to steal Ms. Brown's money. And because the trial court credited Ms. Brown's version of events, the court could have further inferred that the fact that appellant never came back to the apartment after throwing away the trash and later verbally threatened Ms. Brown for bringing up the money evidenced his guilt. *See, e.g.*, *Ebron*, *supra* note 7, 838 A.2d at 1148 (evidence of threats relevant to show consciousness of guilt). Accordingly, appellant's theft conviction is affirmed.[9]

---

[9] Relatedly, appellant also challenges the trial court's decision to discredit his testimony that he decided not to return to the apartment after taking out the trash because he saw someone associated with a man who had previously shot him. He claims that the trial court was required to credit his testimony because Ms. Brown had "confirmed" appellant's story when she testified that appellant had left her a voicemail about someone who came over to Ms. Brown's apartment (Ms. Brown: "He was talking about the dude that came over. He said y'all good for each other"). We are unpersuaded by appellant's argument that a voicemail about some unknown individual that appellant claims came over to Ms. Brown's apartment corroborates his testimony. The trial court was not required to speculate, as appellant contends, and did not clearly err in not deciding, that the individual appellant claimed to have seen is the same person as the one referenced in the voicemail. *See, e.g.*, *Perez v. United States*, 968 A.2d 39, 63 (D.C. 2009) ("This court . . . reviews the trial court's [credibility] findings only for clear error.").

## III. Conclusion

Based on the foregoing reasons, appellant's convictions of second-degree theft and attempted threats are

*Affirmed.*