*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 12-CF-1837

EDDIE WILLIAMS, APPELLANT,

v.

UNITED STATES, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CF2-4178-12)

(Hon. Florence Y. Pan, Trial Judge)

(Submitted February 5, 2014                    Decided January 15, 2015)

*Ian A. Williams* was on the brief for appellant.

*Ronald C. Machen Jr.*, United States Attorney, and *Elizabeth Trosman*, *Veronica M. Sanchez*, and *David B. Goodhand*, Assistant United States Attorneys, were on the brief, for appellee.

Before THOMPSON and EASTERLY, *Associate Judges*, and RUIZ, *Senior Judge*.

RUIZ, *Senior Judge*:  On July 5, 2012, appellant Eddie Williams was charged

by superseding indictment with assault with a dangerous weapon (ADW),[1]

---

[1] D.C. Code §§ 22-402, -3611 (2012 Repl.).

possession of a firearm during a crime of violence (PFCV),[2] threats to injure another person (felony threats),[3] and commission of a felony while on release.[4] The first three charges were tried by a jury, which convicted appellant of felony threats and acquitted him of ADW[5] and PFCV. The court convicted him of committing a felony while on release. Appellant challenges the trial court's ruling admitting evidence that he had previously threatened the complaining witness on multiple occasions, once while armed. He also contends that the trial court improperly admonished a witness to "tell the truth" in the jury's presence, and impermissibly based appellant's sentence in part on finding that appellant was armed when he threatened the complaining witness, even though the jury acquitted him of the weapons offenses. We conclude that appellant did not suffer substantial prejudice as a result of the asserted errors, and affirm the convictions.

---

[2] D.C. Code § 22-4504 (b) (2012 Repl.).

[3] D.C. Code § 22-1810 (2012 Repl.).

[4] D.C. Code § 23-1328 (a)(1) (2012 Repl.).

[5] The jury hung on the lesser-included offense of simple assault.

**I.**

All charges arise from a single incident on October 11, 2011, when appellant approached a neighbor, D.J., and threatened to shoot him. D.J. and a friend who witnessed the encounter testified that they saw appellant reach into the waist or pocket of his jeans to reveal what looked like the handle of a gun. As the jury learned, this was not the first hostile interaction between appellant and D.J. They had met about one year before, right after D.J. had moved to the 37th Street, S.E. neighborhood, when appellant put a gun to D.J.'s head and told him to "give me all your shit." D.J. said at trial that the weapon appellant put to his head, which he saw from the "corner of [his] eye," looked "like a toy gun," like a "gray or black" 9-mm gun. When D.J. resisted, appellant tried to "jack"[6] him and asked him to go to the "cut," an invitation that D.J. refused because he did not want appellant "to shoot" him. D.J. also testified that after that initial encounter appellant would call him "bitch ass" and taunt him on "a weekly or monthly basis" about D.J.'s former neighborhood, as "everybody" did.

---

[6] D.J. explained that "jack" means "like they trying to get me like play with me like."

**II.**

On appeal, appellant contends that the jury should not have been allowed to hear evidence that: (1) he had once assaulted and made many taunting remarks to D.J. during the course of the year prior to the October 11, 2011, incident that underlay the charges, and (2) he was armed with what looked like a gray or black 9-mm gun a year before the charged offenses. The court admitted evidence of appellant's past taunts and armed assault against D.J. as relevant to the felony threats count because it showed the relationship between the parties and explained why D.J. would have believed that appellant was reaching for a gun. The trial court ruled that evidence that appellant had brandished a weapon at D.J. in the past was also relevant to the ADW and PFCV counts, insofar as it provided reason to think that appellant owned the weapon used to commit the charged offenses. The trial judge considered that "the probative value is clearly far greater than any prejudicial effect."

We review the trial court's evidentiary rulings for abuse of discretion. *See* (*Markus*) *Johnson v. United States*, 960 A.2d 281, 294 (D.C. 2008). We apply a five-step analysis in reviewing whether the trial court has properly exercised discretion. *Id.* at 295 (citing (*James*) *Johnson v. United States*, 398 A.2d 354, 363-

67 (D.C. 1979)). Part of the abuse of discretion standard includes an inquiry into whether substantial prejudice has ensued as a result of the trial court's discretionary action. *Id.*

It is a longstanding rule in this jurisdiction that in order to safeguard the presumption of innocence, evidence of a defendant's past bad acts is inadmissible to prove disposition to commit the charged crimes. *See, e.g.*, *Harris v. United States*, 366 A.2d 461, 463 (D.C. 1976) (citing *Drew v. United States*, 331 F.2d 85, 89 (D.C. Cir. 1964)). Such evidence is admissible only if offered for a substantial, legitimate purpose, such as proving motive, intent, common plan, identity, or absence of mistake or accident, *id*. at 463 n.5 (quoting *Drew*, 331 F.2d at 90), and only if the issue is genuine, disputed, and material in the case. *See Campbell v. United States*, 450 A.2d 428, 430 (D.C. 1982) (citing *Willcher v. United States*, 408 A.2d 67, 75-76 (D.C. 1979)). However, evidence of the defendant's past bad acts does not come within the general rule of exclusion if it is "(1) direct and substantial proof of the charged crime, (2) closely intertwined with the evidence of the charged crime, or (3) necessary to place the charged crime in understandable context." (*William*) *Johnson v. United States*, 683 A.2d 1087, 1098 (D.C. 1996) (en banc). Evidence of past acts that place the charged crime in context are those that are "so closely related to the charged offense in time or place that they are

necessary to complete the story of the crime by . . . placing it in context of nearby and nearly contemporaneous happenings." *Id*. (quoting *Holmes v. United States*, 580 A.2d 1259, 1266 (D.C. 1990)); *see Wilson v. United States*, 690 A.2d 468, 469 (D.C. 1997) (defendant's threats to kill the decedent days before decedent was killed were admissible because "relatively contemporaneous" with the charged offense). As with any other relevant evidence, the trial court must exclude otherwise admissible evidence of the defendant's past bad acts if its probative value is "substantially outweighed" by the risk of unfair prejudice. (*William*) *Johnson*, 683 A.2d at 1100-01.

### A. Evidence of appellant's past threats toward D.J.

The offense of threats requires proof of three elements: (1) the defendant uttered words to another person, (2) those words were "of such a nature as to convey fear of serious bodily harm or injury" to the ordinary hearer, and (3) the "defendant intended to utter the words that constituted the threat." *Carrell v. United States*, 80 A.3d 163, 171 (D.C. 2013); *United States v. Baish*, 460 A.2d 38, 41 (D.C. 1983) (recognizing that the elements for misdemeanor threats under D.C. Code § 22-407 and felony threats are the same), *abrogated on other grounds by Carrell*, 80 A.3d at 171. In weighing whether the evidence suffices to satisfy the

second element, the jury must posit an ordinary hearer "aware of all the surrounding circumstances," including the relationship between the defendant and the person to whom facially threatening language is directed, to determine whether the defendant's words, uttered within the framework of that relationship, would convey fear of serious bodily harm. *See Gray v. United States*, 100 A.3d 129, 134, 135-36 (D.C. 2014); *In re S.W.*, 45 A.3d 151, 154, 157 (D.C. 2012) (noting that evidence is generally sufficient for a threats conviction when threatening statements are made in the context of a "volatile or hostile relationship").

At issue in this appeal is whether the government's presentation of evidence about the past hostile relationship between appellant and D.J. in support of the charged ADW and felony threats ran afoul of our longstanding prohibition on the admission of evidence of a defendant's past bad acts to prove propensity. Here, because one of the past bad acts in evidence was similar to the charged offense— armed assault and threats—the risk that the jury would draw an improper inference of propensity was "at its greatest." *Fields v. United States*, 396 A.2d 522, 527 (D.C. 1978).[7]

---

[7] Instead, the trial judge thought the reverse, noting that, "this is a case in which he's alleged to have assaulted somebody with a gun so it's the same type of conduct and so I think the prejudicial effect is not so great as to substantially outweigh the probative value."

Evidence about the hostile relationship between appellant and D.J. was relevant to determining whether the defendant's words charged as threats would have conveyed a fear of serious bodily harm to an ordinary hearer in D.J.'s circumstances. Some evidence of the repeated taunting—especially the more recent instances—was clearly probative and admissible to show appellant's hostility. But the same cannot be said of the prior armed assault. The passage of time—about a year—reduced its probative value. The risk of prejudice from evidence of the prior armed assault, when viewed in light of its reduced probative value and the availability of other less prejudicial evidence (the repeated taunting) to show appellant's hostility, weighed heavily against admission of the year-old armed assault. Nor was it admissible as "intertwined" with the charged offenses. *Parker v. United States*, 586 A.2d 720, 725 (D.C. 1991) (defendant's physical abuse of complaining witness seven months before the charged offense was too temporally removed to be part of the "surrounding circumstances" of the offense).

The trial court, by misapprehending the risk of prejudice, see note 7 *supra*, erred in its exercise of discretion. *See* (*James*) *Johnson*, 398 A.2d at 365 (noting that failure to consider a relevant factor or reliance on an improper factor is error). This initial error in the court's analysis necessarily infected its subsequent weighing of probative value and potential prejudice. We conclude, nonetheless,

that there was no "abuse" of discretion because appellant was not substantially prejudiced. *Id*. at 367. First, the court gave a limiting instruction which told the jury it could use evidence of the past attempted armed robbery only to provide context for the charged offenses and to show the relationship between appellant and the complainant, but not for any other purpose.[8] Second, it appears that the jury did not give undue consideration to the prior armed assault in light of its acquittal on the armed offenses (ADW and PFCV). *See* (*Renaldo*) *Lucas v. United States*, 102 A.3d 270, 281-82 (D.C. 2014) (emphasizing importance of proper limiting instruction in evaluating prejudicial impact of prior crimes evidence). Thus, we can be confident that the jury's verdict finding appellant guilty of threats was not substantially swayed by any error.

---

[8] Other crimes evidence:

> You have heard evidence that Eddie Williams allegedly attempted to rob [D.J.] on a previous occasion. It is up to you as a threshold matter to decide whether to accept that evidence. This evidence was admitted for the limited purpose of providing context for the charged offenses and for showing the relationship between Mr. Williams and Mr. [J.]. In addition, there is some evidence that a gun may have been used during the alleged attempted robbery. It is up to you to decide if a gun was used. If you find that a gun was used on the prior occasion, you may infer but are not required to infer that the same gun was used during the charged offenses if those offenses occurred. You may not use this evidence for any other purpose.

## B. Evidence of prior gun possession

Evidence that the defendant has possessed the weapon used to commit the charged offense is relevant evidence of guilt, and is therefore admissible provided that the connection between the weapon and the offense is not "conjectural and remote." *Busey v. United States*, 747 A.2d 1153, 1165 (D.C. 2000) (quoting *Burleson v. United States*, 306 A.2d 659, 662 (D.C. 1973)). Thus, ballistics evidence that the weapon used in the charged offense was also used by defendant in another shooting eight days earlier is admissible as direct evidence that defendant possessed that weapon. *See Jenkins v. United States*, 80 A.3d 978, 998-99 (D.C. 2013). Evidence that the defendant's weapon met the same general description as the one used in the charged offense may also be admissible under this well-established rule. *See Daniels v. United States*, 2 A.3d 250, 254, 262 (D.C. 2010) (testimony of several witnesses that the defendant had been seen many times with a black gun and a silver gun was properly admitted when there was testimony that the murder weapon was black and other testimony that it was silver). Admissibility turns on consideration of temporal proximity and the closeness of the description of the weapon known to be (or have been) in the defendant's possession with the one used in the charged offense. Evidence connecting the defendant with the weapon used in the offense that puts the weapon

in the defendant's possession close in time to the offense is admissible. *See, e.g.*, *Jones v. United States*, 27 A.3d 1130, 1134 (D.C. 2011) (one month after); *Muschette v. United States*, 936 A.2d 791, 797 (D.C. 2007) (several weeks before). But courts do not abuse discretion in admitting evidence that the defendant had the weapon at a time further removed from the offense if there is strong evidence that the weapon was the same type as the one used in the charged offense. *See McConnaughey v. United States*, 804 A.2d 334, 338-39 (D.C. 2002) (eleven months between two sightings of defendant with a chrome-colored .32 caliber automatic weapon and offense in which .32 caliber bullets were fired from semi-automatic pistol); (*Phillip H.*) *Johnson v. United States*, 701 A.2d 1085, 1092 (D.C. 1997) (picture of defendant taken more than a year before charged offense admissible where .38 or .32 caliber revolver shown in picture was of design abandoned in 1940s and would have produced bullets with no rifling marks like .38 caliber bullets recovered from murder victim).

In this case, the connection between the weapon purportedly used in the charged October 11, 2011, assault and the weapon that, according to D.J., appellant had used one year earlier in an attempt to rob him, was tenuous. D.J. and another witness to the charged offense saw only what "looked like" the black handle of a gun in appellant's waistband or pocket that they did not describe in any further

detail, whereas a year earlier D.J. saw, out of the corner of his eye, appellant brandishing a "black or grey" gun that appeared to be a 9-mm handgun. The considerable temporal remove between the two events coupled with the tenuous similarities between the descriptions of the weapons lessened the probative value of the evidence, while the risk of prejudice was significant for the reasons we have discussed. These considerations weighed heavily against admission of evidence of appellant's prior armed assault on D.J. with a 9-mm gun.[9]

We consider whether appellant was substantially prejudiced by admission of the evidence and again conclude that he was not. The weaknesses in the evidence connecting the two weapons were pointed out to the jury in closing argument, and the trial court gave a proper limiting instruction. See note 8, *supra*. In light of the jury's acquittal of the ADW and PFCV charges, we are confident that the jury did not consider the evidence of his prior gun possession for an improper purpose and thus that appellant did not suffer substantial prejudice.

---

[9] The trial court recognized that "the details about this gun are less clear, as those in the case law," but concluded that "there's a reasonable probability that it's the same gun. There is no indication that it is not the same gun." This statement does not support admission of a defendant's gun possession a year earlier.

## III.

Appellant contends the trial court plainly erred in reminding D.J. that he was under oath and directing him to answer counsel's questions truthfully. He argues that by doing so in front of the jury, the trial court impliedly discredited D.J.'s exculpatory testimony, lent judicial weight to the government's case, and deprived him of an impartial judge, constituting structural error.

We begin by recounting what occurred at trial. D.J. was a reluctant and at times uncooperative witness. At one point, the prosecutor asked D.J. what he had seen when appellant "reached into his pants pocket." D.J. responded that he thought he saw "like a handle" but could not say of what, and then said it was "probably like a belt or something like that. I don't know. . . . I can't explain." The prosecutor asked D.J. to "think back" to when he told the grand jury that he saw a "handle" and asked again, "what do you mean by handle?" The following colloquy ensued in the jury's presence, without objection from the defense:

> [Government]: . . . I want you to think back. You used the word handle. What do you mean by handle?
>
> [Defense]: Objection.

| | |
|---|---|
| [Court]: | Overruled. You're under oath, sir. Answer the question. |
| [Witness]: | Am I under oath? |
| [Court]: | You're under oath. You swore to tell the truth. |
| [Witness]: | Okay. |
| [Court]: | You have to tell the truth. |
| | . . . |
| [Witness]: | I think it's like a – I think it's like a handle, like a handle. |
| [Government]: | Okay. Of what? What did you think it was? |
| [Witness]: | I don't know. It could have been anything. But I think it was a handle. I don't know. . . . It was like he was holding on a door knob or something like that. That's why I say handle. |

The government then impeached D.J. with his statements to the grand jury that the handle he saw was the handle of a gun.

Appellant does not maintain that trial judges are generally precluded from admonishing a witness to testify truthfully. What appellant contends is that to do so in the jury's presence while the witness is testifying "is tantamount to telling the witness that the judge does not believe the witness."

This court has never decided whether it is an abuse of discretion to remind witnesses of their oaths or to admonish them to tell the truth during their testimony in front of a jury.[10] Other courts have found such statements to be within the court's discretion and even part of its obligation. *See United States v. Hinson*, 585 F.3d 1328, 1340 (10th Cir. 2009) ("It is entirely proper—and oftentimes it is imperative—that a witness be cautioned about the consequences of an oath." (quoting *United States v. Vosper*, 493 F.2d 433, 436 (5th Cir. 1974))). However, instructing a witness to answer truthfully carries the implication that the judge thinks the witness might not be doing so. In a jury trial, the assessment of a witness's credibility is a function reserved exclusively to the jury, and encroaching on that function implicates the defendant's right to a jury trial.

---

[10] We have addressed a related question about the propriety of jury instructions that indicate to the jury that the judge thinks one or more of the witnesses are lying. In *Kinard v. United States*, 416 A.2d 1232, 1235 (D.C. 1980), we rejected the "falsus in uno" instruction as inappropriate for use in the District of Columbia court system. That instruction told jurors, in part, that they could disregard a perjurer's testimony. We noted that "one of the serious objections [to the instruction] is that the jury readily may get the implication that the trial judge considers that one or more of the witnesses have willfully testified falsely." *Id.* (quoting *Knihal v. State*, 36 N.W.2d 109, 113-14 (Neb. 1949)). The instruction furthermore "constitutes the expression of the judge as to the credibility of the witnesses and the weight to be given to their testimony." *Id.* Here, we are considering not the appropriateness of an instruction but of an admonishment of a particular witness during his testimony. But the concern that the judge may not influence the jury's assessment of the witness is the same.

In conducting plain error review, we must first determine whether it should have been obvious to the trial judge that she should not have reminded the witness of the oath and to "tell the truth." *See Lowery v. United States*, 3 A.3d 1169, 1173 (D.C. 2010). Even though it is well established that courts must scrupulously avoid conveying to the jury that they believe a witness is lying or telling the truth, we have not previously addressed the issue in terms of a facially neutral reminder of the juror's oath. Therefore, the error, if any, would not have been obvious to the judge. *Cf. Arthur v. United States*, 986 A.2d 398, 412-13 (D.C. 2009) (holding that in light of established legal principle that judge may not interfere in defendant's decision whether to testify, the manner in which trial judge addressed defendant was obviously erroneous where judge did not simply inform the defendant of his rights but "impos[ed] considerable pressure" on defendant). Viewing the court's admonition in context, we think that in this case the court more likely conveyed that the witness was being uncooperative and reluctant to answer questions—something that would already have been apparent to the jury. That impression would have been confirmed by a comparison between the witness's in-court testimony and the witness's more forthright testimony before the grand jury. We,

therefore, conclude that appellant has not shown there was plain error warranting reversal of his convictions.[11]

**IV.**

Finally, appellant challenges the court's decision to base his sentence in part on the court's finding that he was armed during the charged offense despite the jury's acquittal on the weapons charges, ADW and PFCV.[12]  We reject this challenge.  The court enjoys broad discretion in sentencing and can rely on "all the evidence presented at trial, including evidence of charges on which appellant was acquitted," provided that sentencing is not based on "misinformation of a constitutional magnitude." *Greene v. United States*, 571 A.2d 218, 220-21 (D.C. 1990) (quoting *United States v. Bernard*, 757 F.2d 1439, 1444 (4th Cir. 1985)). There is no claim that the trial judge's finding that appellant was armed was based on misinformation of any kind; rather, the trial court assessed the evidence that

---

[11]  Appellant's contention that the error was "structural" in nature does not alter our application of plain error review.  *See* (*Jose*) *Lucas v. United States*, 20 A.3d 737, 741 (D.C. 2011).

[12]  The government argues that this objection was not raised at trial. However, we note that appellant's counsel asked the court at sentencing to impose a lesser sentence in part ". . . given the nature of the conduct, what the jury found, [and] that there was no gun involved—."  This comment sufficed to preserve the issue appellant now raises on appeal.

was presented at trial in a different manner and under a lesser standard than the jury.[13] The statutes appellant was found guilty of violating carry sentencing ranges of up to twenty years (for felony threats) and between one and five years (for committing a felony while on release).[14] The trial court's sentences of twenty-four months for felony threats and twelve months for committing a felony while on release were within those ranges. "Generally, a sentence within statutory limits is not subject to review." *Smith v. United States*, 837 A.2d 87, 100 (D.C. 2003) (citing *Walden v. United States*, 366 A.2d 1075, 1076 (D.C. 1976)).

For the foregoing reasons, we affirm the judgment of conviction.

*So ordered*.

---

[13] The trial court was aware of the jury's acquittal on the PFCV and ADW charges and clearly stated that she found by a preponderance of the evidence that appellant was armed while he committed the offense despite the jury's acquittal on that charge.

[14] *See* D.C. Code §§ 22-1810, 23-1328 (a)(1) (2012 Repl.).