# District of Columbia
# Court of Appeals

No. 13-CM-1394

MILON C. HIGH, JR.,



DISTRICT OF COLUMBIA
COURT OF APPEALS

Appellant,

v.

CMD-11538-13

UNITED STATES,

Appellee.

On Appeal from the Superior Court of the District of Columbia
Criminal Division

BEFORE: Fisher and Easterly, Associates; and Ruiz, Senior Judge.

## JUDGMENT

This case came to be heard on the transcript of record, the briefs filed, and was argued by counsel. On consideration whereof, and as set forth in the opinion filed this date, it is now hereby

ORDERED and ADJUDGED that appellant's conviction for attempted threats to do bodily harm is reversed, and the matter is remanded with instructions to enter a judgment of acquittal.

For the Court:

JULIO A. CASTILLO
Clerk of the Court

Dated: December 24, 2015.

Opinion by Senior Judge Vanessa Ruiz.

*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 13-CM-1394

MILON C. HIGH, JR., APPELLANT,

v.

UNITED STATES, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CMD-11538-13)

(Hon. John McCabe, Trial Judge)

(Argued April 9, 2015                    Decided December 24, 2015)

*Paul J. Riley* for appellant.

*Adrienne Dawn Gurley*, Assistant United States Attorney, with whom *Ronald C. Machen Jr.*, United States Attorney at the time the brief was filed, and *Elizabeth Trosman, John P. Mannarino*, and *David Misler*, Assistant United States Attorneys, were on the brief, for appellee.

Before FISHER and EASTERLY, *Associate Judges*, and RUIZ, *Senior Judge*.

RUIZ, *Senior Judge*: Appellant, Milon C. High, Jr., was convicted of one count of attempted threats[1] following a bench trial. Appellant contends that the government presented insufficient evidence to support his conviction, specifically

---

[1] *See* D.C. Code §§ 22-407, -1803 (2012 Repl.).

arguing that the words he uttered would not convey fear of serious bodily harm or injury to the ordinary hearer. We agree, and reverse appellant's conviction for attempted threats.[2]

## I. Facts

Late in the afternoon on July 5, 2013, appellant was arrested for unlawful entry in the Northeast quadrant of the District of Columbia by Metropolitan Police Department (MPD) Officers Brock Vigil, Nicholas Smith, John Stathers, and "possibly" Dwight Jones.[3] Officer Vigil, the government's sole witness at trial, testified that the arresting officers, who were assigned to the MPD "Vice Unit," were wearing plain clothes but with tactical vests labeled "Police" and police

---

[2] Appellant also contends that the evidence was insufficient to prove that he intended to make a threat. The scienter element of the offense of threats is a question that the court has decided to address en banc. *See Carrell v. United States*, No. 12-CM-523, 2015 WL 5725539, at *1 (D.C. order dated July 15, 2015) (vacating division opinion that held no scienter required beyond the intent to utter words that constitute the threat, 80 A.3d 163, 171 (D.C. 2013), citing possible impact of *Elonis v. United States*, 135 S. Ct. 2001 (2015)). We need not address that aspect of appellant's insufficiency challenge as we reverse appellant's conviction on the ground of insufficiency with respect to another element of the offense.

[3] One count of unlawful entry, in violation of D.C. Code § 22-3302 (2012 Repl.), for which appellant had been arrested on July 5, 2013, was dismissed for want of prosecution.

badges. Officer Vigil also testified that at the time, he and his partner, Officer Smith, patrolled the area appellant was arrested in "[a]t least once a day," and that Vigil "immediately" recognized appellant when he saw him. Appellant was taken into custody, handcuffed, and sat down "on the curb."[4] Smith, standing "[w]ithin a few feet" of appellant, then began to ask appellant for basic identifying information, such as his name, date of birth, and social security number, in order to properly fill out a booking form.

Appellant did not respond to Officer Smith's questions, and instead "glar[ed]" at him. Appellant then said to Officer Smith, "take that gun and badge off and I'll fuck you up." Appellant "continued to look directly at [Officer Smith]" after making the statement. A few seconds later, appellant made a second statement, "something to the effect of, too bad it's not like the old days where fucking up an officer is a misdemeanor." Appellant spoke in a conversational tone throughout.

---

[4] There was conflicting testimony in the record as to whether an ambulance had to be called for appellant after he was arrested for unlawful entry.

At trial, appellant introduced witness testimony that he never made the statements at issue. Appellant's primary defense, however, was that the statements in question, "[g]iven the nature of the words spoken . . . and the context surrounding them . . . would not convey fear of serious bodily harm to the ordinary hearer." The trial court credited testimony presented by the defense that there was "some bad feeling[s] on the part of [] [appellant's] family towards some of the officers," and found appellant guilty of attempted threats, concluding that the negative feelings toward the officers "helps to demonstrate why there might be a reason [appellant] would be angry enough to just lose his temper and make these statements . . . ." Appellant was sentenced to sixty days of incarceration and timely appealed the judgment of conviction.

## II. Sufficiency of Evidence

Appellant contends that the government failed to prove beyond a reasonable doubt that his statement would cause an ordinary hearer to reasonably believe that the threatened harm would occur. In reviewing for sufficiency of evidence, we must sustain the conviction unless there is "no evidence upon which a reasonable mind could fairly conclude guilt beyond a reasonable doubt." *Bolden v. United States*, 835 A.2d 532, 534 (D.C. 2003) (quoting *Harris v. United States*, 668 A.2d

839, 841 (D.C. 1995)) (noting appellant faces a "difficult burden" in asserting such a challenge). When the appeal is from a bench trial, we recognize that the trial court is empowered to weigh the evidence, draw reasonable inferences of fact, and make determinations of the credibility of witnesses; we will displace such findings only if they are "plainly wrong or without evidence to support [them]." *Watson v. United States*, 979 A.2d 1254, 1256 (D.C. 2009) (internal quotation marks omitted) (alteration in original) (quoting *Mihas v. United States*, 618 A.2d 197, 200-01 (D.C. 1992)). Whether trial was by a jury or the court, on appeal this court reviews the legal sufficiency of the evidence de novo. *See Russell v. United States*, 65 A.3d 1172, 1176 (D.C. 2013).

To obtain a conviction of threats to do bodily harm, the government must prove, *inter alia*, the following beyond a reasonable doubt: that "(1) the defendant uttered words to another person, [and that] (2) those words were of such a nature as to convey fear of serious bodily harm or injury to the ordinary hearer . . . ." *Williams v. United States*, 106 A.3d 1063, 1067 (D.C. 2015) (citation and internal quotation marks omitted). See note 2, *supra*.[5]

---

[5] The government was permitted to charge appellant with attempted threats even though it purported to prove the completed offense. *See Evans v. United States*, 779 A.2d 891, 894 (D.C. 2001).

We begin by noting that this court has previously recognized three general fact patterns where we have "determined that the underlying situation presents some substantive reason—beyond the particulars of the utterance itself—for an objective listener's belief that the defendant is inclined to do harm and that the threat should be taken seriously . . . ." *In re S.W.*, 45 A.3d 151, 157 (D.C. 2012). One such fact pattern is where, as in the case before us, "the defendant makes statements to law enforcement officers acting in the course of duty." *Id.* at 158. In these encounters, "we have generally upheld convictions for threats . . . against challenges of evidentiary insufficiency." *Id.*; *see, e.g., Gayden v. United States*, 107 A.3d 1101, 1102, 1106 (D.C. 2014) (affirming conviction of attempted threats where defendant told an officer who had urged defendant "to move along" that he "could get hit" i.e., murdered); *Joiner-Die v. United States*, 899 A.2d 762, 765 (D.C. 2006) (discussing a "sequence of events . . . [that] could lead a reasonable person to believe he was in imminent danger of bodily harm," even though defendant was not armed, where he angrily exited his car, reached into his jacket, and said he was going to "bust" the officer who had asked him to move his car); *Clark v. United States*, 755 A.2d 1026, 1031 (D.C. 2000) (noting that taking into account "the underlying situation, appellant's choice of words, his tone, his manner, and Officer Mapp's immediate interpretation, a reasonable jury could conclude that the statements made [during search and seizure] would 'convey fear

of serious bodily harm or injury to the ordinary hearer'" (quoting *United States v. Baish*, 460 A.2d 38, 42 (D.C. 1983))); *Postell v. United States*, 282 A.2d 551, 552-53 (D.C. 1971) (upholding conviction based on a threat that was conditioned on the police officer engaging in his professional duties, and thus the threat was not remote). Nonetheless, simply because certain words are addressed to a law enforcement officer who is performing official duty does not necessarily mean that the utterance constitutes a criminal threat. *See, e.g., Lewis v. United States*, 95 A.3d 1289, 1290, 1291-92 (D.C. 2014) (holding that notwithstanding that defendant yelled at arresting officer "that [officer] was lucky that we didn't get him (arrest defendant) when he had his gun on him, because he would have blown officer's partner's god-damned head off," the statement did not satisfy second element because a past conditional statement that "hinge[s] on an impossibility" cannot induce fear) (alterations in original omitted).

Appellant concedes that the government met its burden as to the first element of the offense, because Officer Vigil heard appellant make the statements in question, and his testimony was credited by the fact-finder.[6] We conclude,

---

[6] As appellant notes in his brief, Officer Vigil was heavily impeached. This court generally is in "no position to second-guess, on the basis of a paper record, a credibility determination by a trier of fact who was in the courtroom." *Robinson v. United States*, 928 A.2d 717, 727 (D.C. 2007) (quoting *Lee v. United States*, 668 A.2d 822, 833 n.26 (D.C. 1995)).

however, that there was insufficient evidence to prove the second element of the offense, that an ordinary hearer, in the same circumstances, who heard appellant's statements would reasonably fear imminent or future serious bodily harm or injury.

While "[n]o precise words are necessary to convey a threat," *Griffin v. United States*, 861 A.2d 610, 616 (D.C. 2004) (quoting *Clark*, 755 A.2d at 1031), appellant's words must still be able to induce "fear of serious bodily harm or injury to the ordinary hearer," *Gray v. United States*, 100 A.3d 129, 133 (D.C. 2014) (quoting *Carrell*, 80 A.3d at 171). The "ordinary hearer" perspective establishes an objective standard, but it is evaluated contextually, assuming awareness of the circumstances known to the parties in the case. *See id.* at 134-36. We conclude that appellant's statements do not meet this standard. Appellant's statements, "take that gun and badge off and I'll fuck you up," and "too bad it's not like the old days where fucking up an officer is a misdemeanor," reasonably construed, are most aptly described as an expression of exasperation or resignation over the fact that appellant had just been arrested by police officers for whom his family had "bad feeling[s]" based on prior experience.[7] These statements do not convey a true

---

[7] The trial court observed that appellant and his family "may very well feel very justified having bad feeling[s] and may feel that they've been, you know, mistreated by police officers in the past."

threat of serious bodily harm or injury to Officer Smith.[8]

Specifically, appellant's first statement—"take that gun and badge off"—is not a direct challenge or a "dare" to Officer Smith; appellant is not taunting the officer, or directly attempting to goad him into hand-to-hand combat. Rather, appellant is communicating that if Smith were *not* a police officer, *then* appellant would, in his words, "fuck [him] up." Similarly, appellant's second statement— referring with nostalgia to a time past ("too bad it's not like the old days") when assaulting a police officer was a misdemeanor—recognizes the increased penalty associated with inflicting physical harm upon a law enforcement officer as yet another reason *not* to do so. The statements convey both appellant's anger at being arrested (in his view unjustifiably) as well as his appreciation that he is constrained by the officer's status and potential criminal penalties from doing anything about it. Read together, appellant's statements amount to a feisty lament, an "expression of [his] frustration over his arrest, rather than a serious threat of bodily harm." *Lewis*, 95 A.3d at 1291; *cf. Gray*, 100 A.3d at 136 (noting that "I'm going to kill

---

[8] Even if appellant's first statement—"take that gun and badge off and I'll fuck you up"—is considered a conditional threat under *Postell*, 282 A.2d at 553, it was Officer Smith—not appellant—who possessed the ability to trigger the hypothetical "condition." Under the circumstances, the idea that a law enforcement officer would divest himself of his badge and official status to willfully engage an arrestee in a fight is "so remote as not to connote a menace or to create alarm." *Id*. at 553.

you" accompanied by a "gun motion" with hands were "facially threatening words" that could be "taken [] at face value"); *Haney v. United States*, 41 A.3d 1227, 1229, 1234 (D.C. 2012) (holding that it was for jury to decide whether evidence that defendant made gesture mimicking cocked gun and mouthed "I'm going to fuck you up" directed at officer testifying against him in court was a threat against the officer or merely expression of generalized "prior dislike of law enforcement").

Nor do appellant's statements reasonably convey a desire or ability to inflict serious injury in the future. Looking solely to the words spoken, it would be unreasonable for an ordinary hearer "to presume that appellant's statement carried an implied future threat" that appellant would "hunt down" and visit physical harm on Officer Smith at a later time. *Lewis*, 95 A.3d at 1292. Nothing in the statements uttered by appellant is a prediction or speaks to the future.

Having concluded that the words appellant uttered were not on their face threatening, our analysis continues, as the "context of an utterance can turn words that would be innocuous . . . into a threat." *Gray*, 100 A.3d at 136; *see also id.* at 134 (noting that "the words . . . uttered are 'just the beginning' of a threats analysis" (quoting *In re S.W.*, 45 A.3d at 157)). Accordingly, we consider the

"complete context" that the words were used in, including the factual circumstances surrounding the utterance. *Id.* at 136.

Here, the context reinforces the conclusion that the statements made would not induce fear in an ordinary hearer in the same circumstances. Appellant spoke in what was described as a conversational tone, one not rising above the level of two people talking in a quiet room. When appellant made the statements, he had already been arrested: he was bound by handcuffs, seated on the street curb, and was closely surrounded by at least three—possibly four—MPD officers. It was clear that appellant "no longer posed a threat" to Officer Smith, if he ever did. *See Lewis*, 95 A.3d at 1291 (taking into account that appellant had been arrested and handcuffed when he uttered an alleged threat); *cf. Gayden*, 107 A.3d at 1106 n.4 (considering that the statements were made "prior to arrest" in concluding that sufficient evidence existed to convict). Further, while it is well settled that "the government need not prove that the actual hearer felt fear or intimidation," evidence of a person's actual response is "sometimes the best evidence available" of how an ordinary hearer would have responded. *Gray*, 100 A.3d at 135. Here, the record is devoid of evidence that Smith was "aware of a certain risk" after hearing the utterances. *Id.*; *cf. Clark*, 755 A.2d at 1031 (considering the police officer's "immediate interpretation" of appellant's words in concluding that

evidence was sufficient to affirm conviction of threats to do bodily harm). Thus, our analysis of the surrounding circumstances confirms that the statements would not "convey fear of serious bodily harm" to the ordinary hearer. *Williams*, 106 A.3d at 1067 (quoting *Carrell*, 80 A.3d at 171).

In sum, we hold that the evidence was insufficient to support appellant's conviction for attempted threats to do bodily harm. Accordingly, we reverse and remand with instructions to enter a judgment of acquittal.

*So ordered.*