*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 19-CM-817

CHANTEL THOMAS, APPELLANT,

V.

UNITED STATES, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CMD-5497-19)

(Hon. Patricia A. Broderick, Trial Judge)

(Submitted November 2, 2020                    Decided May 6, 2021)

*Russell A. Bikoff* was on the brief for appellant.

*Timothy J. Shea*, United States Attorney at the time the brief was filed, and *Elizabeth Trosman*, *Elizabeth H. Danello*, *Michael McCarthy*, and *Randle T. Wilson*, Assistant United States Attorneys, were on the brief for appellee.

Before GLICKMAN, THOMPSON, and BECKWITH, *Associate Judges*.

GLICKMAN, *Associate Judge*:  Appellant Chantel Thomas challenges the sufficiency of the evidence supporting her convictions for simple assault[1] and

---

[1] D.C. Code § 22-404 (2012 Repl. & 2020 Supp.).

attempted threats to do bodily harm.[2]   Because the evidence was sufficient to establish the former but not the latter, we affirm the simple assault conviction and reverse the attempted threats conviction.

## I.

On April 21, 2019, around 3:30 a.m., Officer Omar James and Officer Arnold Corporan responded to a report of two men fighting in a residential street. The officers detained the two individuals and began questioning them in the street. Moments later, appellant, who was in a relationship with one of the individuals, approached from behind the officers, which prompted Officer James to tell her not to "walk up on [them] like that" and repeatedly ordered her to step back. Appellant did not comply, so Officer James "held her by the arms and pushed her away."   Appellant then became "belligerent and aggressive."   She was calling Officer James names, telling him not to shove her again, and threatening to spit on him.  She approached the officers again, and Officer James again pushed her away. When appellant approached a third time, still yelling at Officer James, Officer James grabbed her and pushed her to a "safe distance" on the sidewalk.   In

---

[2] D.C. Code § 22-407, -1803 (2020 Supp.).

response, appellant "started flailing and swinging at [Officer James] and pushing," even "mak[ing] contact" with him. Officer James tried placing appellant in handcuffs, but appellant fell to the ground. Two officers who had just arrived on the scene, Officers Linda Muse and Melanique Rich, helped place appellant in handcuffs.

Once appellant was safely detained, Officers Muse and Rich watched over her while Officer James returned to Officer Corporan and the two men. At this point, appellant was on the sidewalk with her hands cuffed behind her back and two officers standing directly in front of her. Officer James was in the middle of the street, about ten to twelve feet away from appellant. Appellant continued calling Officer James names and threatening to spit on him. At one point, appellant said that she "should" or "will" "take [his] gun and slap his bitch ass."[3] There was no evidence about how Officer James perceived or reacted to this threat.

Appellant was charged with simple assault for swinging at Officer James after he pushed her to the sidewalk, and attempted threats to do bodily harm for

---

[3] Officer James testified that appellant told him that she would "*smoke* [his] bitch ass," but it is clear from the body-worn camera footage that she said "*slap* [his] bitch ass."

telling Officer James that she "should" or "will" "take [his] gun and slap his bitch ass." At appellant's bench trial, the government presented the foregoing testimony from Officer James, as well as body-worn camera footage from Officers Corporan and Rich. The defense did not present any evidence, and appellant did not testify.

The trial court found appellant guilty on both charges. Relying heavily on the body-worn camera footage, the trial court found that "everything [it] saw was consistent with [Officer James's] words about what happened." On the simple assault charge, the trial court found that appellant "did actually swing at [Officer James] in a punch-like manner. He stood his ground at one point, and she charged him twice." The court also found "that the first thing you notice about that video is it's shocking how roughly [Officer James] pushes [appellant]." Nonetheless, the court found that Officer James did not use excessive force. On the attempted threats charge, the trial court was not sure "if the threat was I should or I will" but found that "it's very clearly a threat" either way.

## II.

Appellant claims the evidence was insufficient to support either conviction. We review this challenge de novo, viewing the evidence in the light most favorable to the prosecution, and affirming a conviction if "any rational trier of fact could

have found the essential elements of the crime beyond a reasonable doubt."[4]  With respect to bench trials, our review is "deferential to the prerogatives and advantages of the trial judge," and "[w]e will not disturb the trial judge's factual findings unless we can conclude they were plainly wrong or without evidence to support them."[5]

## A.

To prove simple assault (i.e., attempted-battery assault), we have said the government must show "(1) an act on the part of the defendant; (2) the apparent present ability to injure the victim at the time the act is committed; and (3) the intent to perform the act which constitutes the assault at the time the defendant commits the act."[6]  Appellant challenges the second element, claiming she lacked

---

[4]  *Powell v. United States*, 238 A.3d 954, 957 (D.C. 2020) (quoting *Solon v. United States*, 196 A.3d 1283, 1289 (D.C. 2018)).

[5]  *Augustin v. United States*, 240 A.3d 816, 823–24 (D.C. 2020).

[6]  *Vines v. United States*, 70 A.3d 1170, 1179 (D.C. 2013); *accord Rogers v. United States*, 222 A.3d 1046, 1053 (D.C. 2019).  In *Perez Hernandez v. United States*, we have granted rehearing en banc to consider the elements of simple assault, notably including whether the required *mens rea* is not merely intent to perform the assaultive act, but an intent to injure the victim.  207 A.3d 594 (D.C. 2019), *vacated on grant of reh'g en banc*, 207 A.3d 605 (D.C. 2019).  For present purposes, we can assume the prosecution must prove intent to injure; appellant does not contend there was insufficient proof of her intent.

the "apparent present ability to injure" Officer James given the distance between them, their "great" size disparity, and the fact that Officer James allegedly initiated the use of force.

Appellant's arguments are not convincing. First, she was not too far away. Officer James, whose testimony the trial court generally credited, testified that appellant was "pretty close" to him; close enough, in fact, that she actually "ma[d]e contact with [him]." Second, to prove simple assault, the threatened "injury" "may be extremely slight,"[7] so the size disparity between appellant and Officer James does not mean she lacked the apparent ability to "injure" him. In any event, a reasonable juror could find that the threatened injury was not slight, given that appellant "did actually swing at [Officer James] in a punch-like manner."[8] Third, even if Officer James shoved her first, appellant was not justified in responding with force. A citizen may use force against an officer only to defend against

---

[7] *Ray v. United States*, 575 A.2d 1196, 1198 (D.C. 1990); *see also Contreras v. United States*, 121 A.3d 1271, 1275–76 (D.C. 2015) (holding that attempted-battery assault is not a "crime of violence" under federal law because it "can rest on the use or attempted use of force that does not rise to the level of violent force as required under federal law").

[8] Appellant argues that she merely "flailed" her arms to express "her impotence and helplessness" after being shoved by Officer James, as opposed to swinging them in a "punch-like manner." However, appellant gives us no reason to think the trial court's finding was clearly wrong.

excessive force.[9]   However, the trial court found that Officer James's pushing of appellant, albeit "shocking," was not excessive.  Appellant does not dispute this finding, and we do not consider it plainly wrong.  Consequently, sufficient evidence exists to show that appellant had the apparent present ability to injure Officer James when she swung at him.

**B.**

To prove the completed offense of threats to do bodily harm, the government must show (1) "the defendant uttered words to another person;" (2) "the words were of such a nature as to convey fear of bodily harm or injury to the ordinary hearer;"[10] and (3) the defendant "had the purpose or knowledge that his words would be received as a threat."[11]   We analyze the elements of the completed offense, because proof of the completed offense of threats suffices to support a conviction for attempted threats.[12]   Appellant disputes only the second element. When considering whether appellant's words could induce fear of bodily harm in

---

[9] *Speed v. United States*, 562 A.2d 124, 128 (D.C. 1989).

[10] *Joiner-Die v. United States*, 899 A.2d 762, 764 (D.C. 2006).

[11] *Carrell v. United States*, 165 A.3d 314, 330 (D.C. 2017) (en banc).

[12] *Evans v. United States*, 779 A.2d 891, 894 (D.C. 2001).

an ordinary hearer under the circumstances, we consider "not just the words uttered, but also the complete context in which they were used."[13]

Here, appellant yelled at Officer James that she "should" or "will" "take [his] gun and slap [his] bitch ass." Putting aside any difference between "should" and "will,"[14] we consider the statement facially threatening. It expressed a desire, if not an intent, to physically harm Officer James. Appellant is not helped by the fact that she yelled this on the heels of a hostile interaction with Officer James: Officer James had pushed her so roughly the court deemed it "shocking," and she had "sw[u]ng at him in a punch-like manner" and "charged him twice." Given this conflict, an ordinary hearer could reasonably infer appellant would hurt Officer James if she could.

The critical fact, however, is that she could not. At the time appellant made the statement at issue, Officer James was in the street, and appellant was on the sidewalk, with her hands cuffed behind her back, and not one but two officers

---

[13] *Gray v. United States*, 100 A.3d 129, 136 (D.C. 2014).

[14] The trial court could not determine whether appellant said "should" or "will" based on the body-worn camera footage, but concluded it was "clearly a threat" either way. Appellant does not argue that the difference in words matters, so we decline to address it.

standing guard in front of her. Despite these obstacles, the government argues that appellant still could have carried out her alleged threat. That argument strains credulity. To grab Officer James's firearm and "slap" him, appellant would have had to break out of her handcuffs, push past both officers in front of her, cover the distance between herself and Officer James without being stopped by any of the other officers at the scene, and grab his weapon off his own hip. If she does not break out of her handcuffs, the chances of this happening plunge further. Two cases are instructive on this point. In *High v. United States*, the appellant made the allegedly threatening statements when "he was bound by handcuffs, seated on the street curb, and was closely surrounded by at least three — possibly four — MPD officers."[15] Under those circumstances, we said "[i]t was clear that [the] appellant 'no longer posed a threat' to Officer Smith, if he ever did."[16] Similarly, in *Lewis v. United States*, another threats case, we noted that the "appellant only made the statement after he was arrested and placed in handcuffs, when he no longer posed a physical threat to the two officers."[17] Here, appellant was restrained in comparable

---

[15] *High v. United States*, 128 A.3d 1017, 1022 (D.C. 2015).

[16] *Id.*

[17] *Lewis v. United States*, 95 A.3d 1289, 1291 (D.C. 2014).

fashion, so we are satisfied that she no longer posed a physical threat to Officer James.[18]

Nor does her statement carry an "implied future threat" to "hunt down" Officer James whenever she was released from custody. Absent any indication that her statement "speaks to the future,"[19] such an inference is objectively unreasonable.[20]

In similar circumstances — when a handcuffed defendant threatens a police officer — we have deemed the utterance to be genuinely threatening to the ordinary hearer only if there is a reasonable chance the defendant could still execute the threat. For example, in *Haney v. United States*, the appellant, while

---

[18] Of course, we have recognized in other contexts that handcuffed individuals can still pose a present threat to themselves and others. *See Germany v. United States*, 984 A.2d 1217, 1229 & n.16 (D.C. 2009). For instance, an individual with his hands cuffed, even behind his back, might still be able to grab a weapon hidden in their waistband. But given that appellant threatened to grab a weapon off *someone else*'s waistband some ten feet away, we are satisfied the combination of behind-the-back handcuffs and dual guardians eliminated that risk.

[19] *High*, 128 A.3d at 1022.

[20] *See id.* at 1021–22 (concluding that ordinary hearer could not reasonably presume the statement "carried an implied future threat" to "hunt down" the officer where appellant told officer, "take that gun and badge off and I'll fuck you up" (quoting *Lewis*, 95 A.3d at 1292)).

handcuffed at a hearing, told a detective seated in the courtroom audience, "I'm going to fuck you up," and mimicked a gun with his hand.[21]  We held that the appellant's actions could reasonably be interpreted as a threat, despite the fact that he was securely in custody, because "[i]t would not be unreasonable for the jury to infer that [appellant's] confederates could have" carried out the threat on appellant's behalf.[22]  Similarly, in *Clark v. United States*, we found the evidence sufficient to support a conviction for threats where a handcuffed appellant told an officer, "You won't work here again, wait until I tell the boys, they will take care of you."[23]  The officer understood that to mean the "boys" would injure her on appellant's behalf.[24]  In contrast, in *High*, where a handcuffed appellant told an officer standing a few feet away, "take that gun and badge off and I'll fuck you up,"[25] we held the evidence was insufficient partly because "[i]t was clear that

---

[21]  41 A.3d 1227, 1229 (D.C. 2012).

[22]  *Id.* at 1233–34.

[23]  755 A.2d 1026, 1028, 1031 (D.C. 2000).

[24]  *Id.* at 1028.

[25]  128 A.3d at 1019.

appellant 'no longer posed a threat'" at that time, and the statement did not "reasonably convey a desire or ability to inflict serious injury in the future."[26]

Here, as previously discussed, there was no reasonable chance that appellant could execute her threat. Her words do not give an ordinary hearer any reason to think appellant meant for unspecified accomplices to execute the threat on her behalf, and the government did not present any evidence supporting such an understanding of her remark.[27] Accordingly, appellant's case is more analogous to *High*, where the court reversed a threats conviction, than to *Clark*, where the court upheld it, and *Haney*, where the court found the statement sufficiently threatening to an ordinary hearer. The government argues *High* is distinguishable because the

---

[26]    *Id.* at 1022–23; *see also Lewis*, 95 A.3d at 1290–92 (holding that evidence was insufficient to support threats conviction where handcuffed appellant told officer "that he was lucky that [the officers] didn't get him (arrest him) when [ ] he had his gun on him, because he would have blown [an officer's] god-damned head off," because it was "a past conditional statement that hinged on an impossibility — appellant's possession of a gun at the time of arrest").

[27]    We take into account the fact that, as recorded in body-worn camera footage of the incident, the two men detained in the street objected when Officer James pushed appellant to the sidewalk and attempted to handcuff her. As Officers Muse and Rich ran towards the scuffle, one of the men yelled, "Get his ass, man!" (The identity of the person to whom he directed this exhortation is unclear.) But this was a few minutes *before* appellant voiced her threat to take Officer James's gun. There is no evidence that either of the detained men (or anyone else) said or did, or could have done, anything against the police in reaction to appellant's words.

appellant's threat in that case was conditional, whereas appellant's statement here was not.[28]  We also recognize that *High* did not consider the statements facially threatening, whereas we do vis-à-vis appellant.

Even so, "context can make facially threatening words benign,"[29] and we are satisfied that it does so here.  An ordinary hearer would know that appellant already swung at Officer James "in a punch-like manner."  But they would also know that appellant's hands are now cuffed behind her back, and two officers are standing guard in front of her.  Meanwhile, Officer James is still in the street, and there is no evidence he thought appellant posed any risk at this time.  Under these circumstances, the ordinary hearer could not reasonably take appellant's threat at face value.  Rather than a "serious threat of bodily harm," her statements were a "feisty lament, an 'expression of [her] frustration'" over the prior alarming events — being shoved by Officer James in a manner that "shock[ed]" the court, and watching her boyfriend get arrested.[30]

---

[28]  *High*, 128 A.3d at 1022 ("[A]ppellant is communicating that if Smith were *not* a police officer, *then* appellant would, in his words, "fuck [him] up.").

[29]  *Gray*, 100 A.3d at 136.

[30]  *High*, 128 A.3d at 1022 (quoting *Lewis*, 95 A.3d at 1291).

That being said, appellant was convicted of attempted threats, not completed threats. Generally, when evidence is insufficient to prove a completed offense — as it is here — that same evidence could still prove an *attempt* to commit that offense.[31] Our past cases on threats, however, have not consistently hewed to this distinction. For example, in both *High* and *Lewis*, the court reversed convictions for attempted threats because the evidence was insufficient to prove the elements of the greater-included offense.[32] As a result, we have yet to grapple with the murky boundary between the two offenses, particularly when it comes to the "ordinary hearer" element. If attempt is "an overt act done with the intent to commit a crime, . . . which, except for some interference, would have resulted in the commission of the crime,"[33] it is unclear whether proof of attempted threats requires a showing that the threatening utterance would induce an ordinary hearer to fear injury, or whether it is sufficient to prove that the threat was uttered with the

---

[31] *See, e.g.*, *Hagood v. United States*, 93 A.3d 210, 224 (D.C. 2014) ("[T]he armed appellant attempted, but did not successfully complete, the crime of burglary.").

[32] *High*, 128 A.3d at 1020–23; *Lewis*, 95 A.3d at 1291–92.

[33] *Evans*, 779 A.2d at 894 (quoting *Wormsley v. United States*, 526 A.2d 1373, 1375 (D.C. 1987)); *see also Stroman v. United States*, 878 A.2d 1241, 1245 (D.C. 2005) ("To prove attempt, the government must show the intent to commit a crime and the doing of some act toward its commission that goes beyond mere preparation.").

*intent* to induce such fear.[34]  The answer would be dispositive here.  A jury could reasonably find that appellant intended to cause the ordinary hearer in Officer James's shoes to fear bodily harm, but as we previously said, an ordinary hearer would not *actually* be afraid given her incapacitation.

Nonetheless, we need not decide that issue now.  Although our court has yet to consider it, our past cases have reversed convictions for attempted threats where the "ordinary hearer" would not fear bodily injury.[35]  And given that the government has not argued to the contrary, we are not prepared to hold the distinction against appellant.  Thus, we hold that appellant was not guilty of attempted threats.[36]

---

[34]  *Cf. People v. Chandler*, 332 P.3d 538 (Cal. 2014) (addressing the question).

[35]  *High*, 128 A.3d at 1022–23; *Lewis*, 95 A.3d at 1291.

[36]  We note an issue regarding the proper articulation of the second element of threats.  This element, the court has said, requires "words . . . of such a nature as to convey fear of serious bodily harm or injury to the ordinary hearer."  *Lewis*, 95 A.3d at 1291.  Although the words "convey . . . to" may not make it clear, the notion is that while the utterance need not have scared the actual recipient, it must be of a nature to scare an "ordinary hearer."  *See Postell v. United States*, 282 A.2d 551, 553 (D.C. 1971).  But we have occasionally offered a different formulation, typically in passing, in which it does not matter whether the ordinary hearer would be scared, so long as the ordinary hearer would understand the utterance as a serious expression of intent to harm.  *See, e.g., In re S.W.*, 45 A.3d 151, 156 (D.C. 2012) ("[S]peech is only a 'true threat' and therefore unprotected under the

*(continued…)*

## III.

For the foregoing reasons, we affirm appellant's conviction for simple assault and reverse her conviction for attempted threats.

*So ordered.*

---

*(...continued)*
Constitution if an 'ordinary reasonable recipient who is familiar with the[ ] context [of the statement] would interpret' it as a 'serious expression of an intent to cause a present or future harm.'" (alteration in original) (footnote omitted) (first quoting *United States v. Armel*, 585 F.3d 182, 185 (4th Cir. 2009); then quoting *Doe v. Pulaski Cnty. Special Sch. Dist.*, 306 F.3d 616, 622 (8th Cir. 2002))); *Gray v. United States*, 100 A.3d 129, 135 (D.C. 2014) (asking "whether an ordinary hearer would understand words to be in the nature of a threat of serious bodily harm"). The outcome here depends on which of these two formulations govern. An ordinary hearer would probably interpret appellant's statement as a "serious expression of an intent to cause a present or future harm," but would not be scared, given the circumstances. The dispositive nature of this question merits careful attention, but we need not resolve it now, given the application of *High* and *Lewis*.